(No. 24884.— )
IN RE FRANK L. TUTTLE, Attorney, Respondent.

*Opinion filed February 15, 1939—Rehearing denied April 5, 1939.*

CHARLES LEVITON, *amicus curiae.*

GEORGE J. DREISKE, for respondent.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Acting under rule 59, commissioners of this court heard evidence on a complaint against Frank L. Tuttle, who was licensed to practice law in 1910, and recommended that he be disbarred. He has filed exceptions to their report.

The complaint filed by the committee, on inquiry of the Chicago Bar Association, charged that Tuttle testified in the

United States district court on June 1, 1937, in the case of *United States of America* v. *William H. Malone* as to certain checks he received from the Pullman Company and the North Shore Gas Company, and as to what he did with the proceeds of the checks, to such effect that his conduct tended to defeat the administration of justice and tended to bring the courts and legal profession into disrepute. He was also charged with participating in arrangements whereby the companies named obtained reductions in taxes, and, further, with receiving substantial fees most of which he paid to a member of the State Tax Commission, which payments he denominated campaign contributions. The complaint charged that while these checks were entered in the books of the companies as fees, the purpose of the arrangement was bribery of public officials to obtain favorable rulings on tax matters and substantial tax reductions.

The respondent lived in Des Plaines and William H. Malone lived in Park Ridge, Illinois. Tuttle regarded Malone very highly and worked with his faction of the Republican party. Tuttle had his office with the president of the North Shore Gas Company and, during 1926, he was requested to represent that company before the State Tax Commission. He went to Malone who was chairman of that commission and asked him if he had any objections to respondent representing the gas company. Malone replied that he did not care who represented it. After Tuttle received word as to the final assessment, Malone told him the company should make a campaign contribution, and that $2000 would be expected. The president of the gas company told Tuttle that this was a hold-up, but gave him $2500 in currency. Tuttle told Malone he had the money and Malone's messenger called on Tuttle and picked up an envelope containing the $2000 in currency with the amount marked on the envelope as per Malone's instructions. Tuttle entered the remaining $500 on his books as his fee. Although similar transactions were had in the fol-

lowing years, Tuttle did not return the $2500 as income in his tax return to the United States government for the years 1926, 1927, 1928 or 1929 but did make a full return in 1930, and settled with the government in that year for the amounts omitted in the previous years. He testified that $500 a year fully paid him for the services he rendered the gas company, and that the same was true as to the $2000 he retained each year out of the $15,000 fee paid to him by the Pullman Company from 1927 to 1930, inclusive, during which time he represented it before the commission. Each year both companies entered on their books as fees, all the money they paid Tuttle. Respondent insists that the $2000 and $13,000 in currency he gave to Malone's messengers each year, were contributions by the gas company and the Pullman Company to the Len Small campaign fund, except in 1930, when the contributions went to Malone's campaign fund.

In 1927, a man named Ferguson, from the legal department of the Pullman Company, called Tuttle on the telephone and stated to him that the Pullman Company was contemplating a change in attorneys in its tax matters. Ferguson asked Tuttle to call at the company's offices to discuss the matter. Tuttle had two or three conversations with representatives of the company and was told that it had been paying $15,000 a year for the same sort of services before the State Tax Commission. He was asked about his acquaintance with Malone, his political activities, what experience he had in tax matters before the commission and was finally employed. He talked to Malone about this new client. Malone told Tuttle to let him know when the Pullman Company fee was paid, and that he would then tell Tuttle what to do with the $15,000. He called Malone when the company paid him and was told to follow the same course as that used in handling the money from the gas company, but that the amount should be $13,000. Messengers from Malone took up the envelopes marked

with the amount, $13,000, in each of the years 1927, 1928, 1929 and 1930. In their conversation, Ferguson insisted that Tuttle enter the $15,000 on his own books and include the entire amount in his income tax return. He refused to listen to Tuttle when the latter tried to tell him he would have to pay most of the money as a campaign contribution. Ferguson told Tuttle he did not want to know and did not care what Tuttle did with the money, except that he must show it in his income tax return.

Tuttle's testimony shows that there was no substantial reduction in the assessment of the capital stock tax against these two companies, as finally determined, in the years he represented them under their assessments for previous years. He explained the system used of making a much higher tentative assessment than the final one, as a means to compel the production of the books and records of the various companies throughout the State, so that the correct valuation for assessment could be arrived at. However, he shows in his testimony, contrary to his explanation of the system, that these two companies filed annual returns. His explanation was that notices and blank returns were mailed out, follow-up notices were later mailed to the various corporations, and after this had been done two or three times, the high tentative assessment was made and notice of it was given. Tuttle does not explain why, in the case of the Pullman Company, the difference between the tentative and final assessments for the year 1927 would result in a saving of only $9000, which was $6000 less than the $15,000 paid by that company to him. Although the gas company made annual returns to the tax commission, Tuttle says its tentative assessment was around $800,000 while its final assessment was $225,000, in most of the years he represented it.

Respondent stipulated that the transcript of his testimony at the Malone trial was correct, but objected to its admission in this disciplinary proceeding on the ground it

was incompetent. However, he testified in this proceeding and his testimony is almost identical with the transcript.

Respondent contends that it was error to admit in evidence the transcript of his testimony at the Malone trial, in this disciplinary proceeding. He relies on *People* v. *Amos,* 246 Ill. 299, where we held the entire record in a civil suit against Amos should not have been admitted in evidence in the disciplinary proceeding against him and that he was entitled to be confronted by the witnesses. Here, the transcript admitted in evidence was of Tuttle's testimony, alone, and it contained admissions against interest which were competent evidence against him. *Merchants' Loan and Trust Co.* v. *Egan;* 222 Ill. 494; *Miller* v. *People,* 216 id. 309.

Respondent also relies upon *People* v. *Wilson,* 298 Ill. 257, where we held that if a statement is made and the accused denies it, the conversation is not admissible in evidence. Tuttle denies having bribed anyone and denies paying money for any purpose except as contributions to the Small and Malone campaign funds. He singles out the bribery charge in the complaint but ignores the remaining charges it contains. His own testimony before the commissioners covers almost everything the transcript of his testimony at the Malone trial contains. The admissions in the transcript are of conduct that is reprehensible, even if Malone retained none of the money for his own personal use. The contention that the transcript should not have been received in evidence in the disciplinary proceeding cannot be sustained.

The respondent insists that the commissioners found him guilty of perjury and of violations of the Federal Corrupt Practices act and the Federal Income Tax act although these things were not charged against him in the complaint. He contends that bribery was the sole charge and that the report admits it was not proved. However, the complaint

advised the respondent that he was being proceeded against for all the wrongful acts he had detailed in his testimony at the Malone trial. Respondent was not taken by surprise. He could have moved to have the complaint made more definite and certain, had he seen fit to do so. This is not the case of a lawyer being tried on one charge and then being found guilty of offenses not alleged in the complaint. This contention must be overruled.

Respondent says that these acts of misconduct are so old that they are stale claims against him and that while the Statute of Limitations does not bar a disciplinary proceeding against an attorney, much weight should be given to the fact that several years have elapsed since his transactions with the gas company, the Pullman Company and Malone. However, these facts were not known to the public until he testified before the grand jury in 1933, and at the trial of Malone, in 1937. He admitted at the Malone trial, in 1937, that he had testified before the Federal grand jury that he had never paid any money directly or indirectly to Malone, but changed his testimony before the grand jury, after he had been cited for contempt, and admitted paying Malone's messengers and, finally, that he had given $2000 to Malone, himself, in 1930. He also admitted the failure to make proper income tax returns to the Federal government in 1926, 1927, 1928 and 1929, and the settlement of these matters with the government in 1930.

Respondent finally contends that by testifying truthfully before the grand jury and at the Malone trial, he obtained immunity from prosecution by the United States of America and that this should relieve him from answering charges in this sort of proceeding. We cannot subscribe to this doctrine, and, although there is testimony that Tuttle had a good reputation, it is not sufficient to either raise a doubt as to his moral turpitude or to excuse his acts.

In both instances, respondent testified to the division of money he received for services rendered before the State

Tax Commission, by payment of the greater part to messengers from the chairman of that commission. He knew that all these sums were entered on the books of his clients as fees paid him and, after the first work was done by him for the gas company, he knew that he had to pay Malone $2000 out of each $2500 he received from that company. He knew before he began representing the Pullman Company that he would have to turn over the greater part of his fees to Malone.

Although some of the charges in the complaint, such as bribery of public officials, were not proved by clear and convincing evidence, enough has been established to demand that the respondent, Frank L. Tuttle, be disciplined.

Respondent is suspended from practice as attorney and counsellor at law within this State for the period of two years.

*Respondent suspended.*