484

IN RE WARNER WALL, Attorney, Respondent.

*Opinion filed November 27, 1950.*

JOSEPH H. HINSHAW, of Chicago, *amicus curiae.*

GEORGE B. LEE, of Harrisburg, for respondent.

Mr. JUSTICE FULTON delivered the opinion of the court:

The Board of Governors of the Illinois State Bar Association, sitting as commissioners of the court under Rule 59, after a hearing and investigation of charges of unprofessional conduct on the part of the respondent, Warner Wall, has filed in this court its recommendations and findings, together with respondent's exceptions thereto.

Originally the Illinois State Bar Association filed a complaint before the Committee on Grievances, which body, on hearing, by a majority vote found the respondent guilty and recommended that he be suspended from the practice of law for a period of two years.

Acting upon the report of the Board of Grievances, the Board of Governors held further hearings and by their report to this court recommend that an order be entered

disbarring the respondent and that his name be stricken from the roll of attorneys licensed to practice law in the State of Illinois. The respondent has filed his exceptions in accordance with Rule 59. Warner Wall was born in Pulaski County and reared there. He graduated from Northwestern University College of Law in the year 1920 and was admitted to practice the same year. He practiced law with his father in Pulaski County for a short period and then went to Chicago, practicing law in that city until 1931, when he returned to Pulaski County. He was elected State's Attorney of that county in 1944 and was re-elected in November, 1948. He was serving his second term as State's Attorney of Pulaski County at the time this complaint was filed.

. In brief, the complaint charged the respondent with permitting persons to gamble in Pulaski County, without taking any action to suppress the same; that he tolerated gambling and in lieu of prosecution allowed some or all to make periodic payments to him; that the parties making such payments were openly and notoriously engaged in the operation of slot machines and other gambling devices; and that he filed a report as State's Attorney showing the collection of $30,090.09, which included donations paid to respondent by persons guilty of offenses, and that he permitted himself to be interviewed by a reporter for a metropolitan newspaper concerning gambling operations in Pulaski County.

The material facts do not appear to be in serious dispute. The proof consists largely of respondent's own testimony, coupled with statements made by his counsel and with his approval. He is 57 years of age, has practiced law thirty years; subscribed to the usual attorney's oath when admitted to the bar; has twice taken the oath to support the constitution of the United States and of the State of Illinois and to faithfully discharge the duties of the office of State's Attorney.

The testimony of the respondent, supported by the statements of his attorney, shows conclusively that the respondent, with the advice and consent of the sheriff, the county judge, the county commissioners and perhaps other officials, discussed the problem of gambling in Pulaski County. Between them it was agreed that the commercial gamblers operating slot machines were not paying a sufficient amount of money for the privilege of operating gambling establishments. The respondent was asked to secure larger payments or contributions from the offenders. It appears that this practice of using the subterfuge of justice of the peace fines whereby gamblers were required to pay contributions for the privilege of gambling had long been used in Pulaski County. It was said to be a system begun by respondent's predecessor in office and continued on by respondent.

There is no charge that respondent ever used any of the funds thus collected for his own private purposes. Neither did he pay over all of such funds to the county treasurer as provided in chapter 53 of the Revised Statutes. Moneys were expended directly for the school fund, officials' salaries, improvements on the court house, highway, road machinery and other county purposes as the respondent and county officials determined. It is clear that respondent, with the knowledge and consent of other county officials, created a system entirely his own. It was initiated in order to increase the revenue for the county. It was the program to file complaints with a justice of the peace, whereupon the offender would pay a donation or contribution to the respondent or to the sheriff. Oftentimes the amount paid was in excess of what a fine would be. No judgment was ever sought or obtained.

The entire scheme clearly appears to have been one for revenue only and without any affirmative attempt to enforce the State laws against gambling.

In the year 1948 respondent made a State's Attorney's report to the circuit judges, to which an objection was made

because respondent had failed to itemize the various items of receipts. After the hearing respondent was advised to discontinue the practice of collecting fines through contributions. It is not disputed that the system was promptly abandoned and that open gambling has ceased in Pulaski County since October, 1948.

Thirteen witnesses of apparent high standing testified as to the good reputation of respondent. Counsel for the respondent dwells upon the good character of Wall and insists that no fraudulent or dishonest motive has been shown and that the proof is not sufficient to justify disbarment.

Giving full consideration to all the mitigating circumstances showing that prior administration of the State's Attorney's office in Pulaski County followed the same general practice; the showing that other county officials gave their full approval to the system adopted by respondent; the fact that he kept no money for his own use, and the good reputation testified to by prominent citizens, the record discloses without question that the respondent, as the chief law-enforcing officer of Pulaski County, has shown a glaring disregard for the law and the statutes of the State of Illinois.

We have said, in effect, in many cases, "An attorney is an officer of the court, sworn to aid in the administration of justice, and to act in good faith in all legal matters. His clients, the court and the public alike, have a vital interest in his integrity and are entitled to require that he shun even the appearance of any fraudulent design or purpose." *In re Ellis,* 371 Ill. 113; *In re Tuttle,* 371 Ill. 153.

"Respect for law and for the administration of justice by the officers of our courts is necessarily fundamental in our form of government." *People ex rel. Chicago Bar Ass'n* v. *Gorman,* 346 Ill. 432.

Upon perusal of the entire record and because of some of the reasons stated above, this court is not disposed to strike respondent's name from the roll of attorneys. We

do, however, find him guilty of unprofessional conduct which tends to bring the legal profession, the courts and the administration of justice into disrepute.

He is, therefore, severely reprimanded and censured. It is the further finding of this court that respondent be suspended from the practice of law in this State for the period of ninety days.

*Respondent censured and suspended.*

Mr. JUSTICE THOMPSON took no part in the consideration or decision of this case.