PONDER, Justice.
The Louisiana State Bar Association, appearing through its Committee on Professional Ethics and Grievances, brought these proceedings seeking the disbarment of Mark William Sackett on the grounds that he was guilty of professional misconduct on eight occasions.
Prior to the institution of this suit, the respondent was charged in nineteen specifications with acts of misconduct before the Committee on Professional Ethics and Grievances, hereinafter referred to as the Committee, and during the investigation of the Committee he was charged with five additional acts of misconduct.
After a hearing before the Committee, the respondent was found guilty of eight of these alleged acts of misconduct, Nos. 1, 6, 7, 8, 9, 10, 14, and 19. Specifications or charges in Nos. 2 and 4 were dismissed. Specifications 3, 5, 11, 13, 15, 17, and 18 were dismissed by the Committee as of non-suit for the reason that the witnesses necessary for proving these charges could not be located. Specification No. 16 was dismissed because complainant was deceased at that time.
On hearing before the 'Commissioner appointed by this Court to take the testimony and evidence in this case, the Commissioner *662 arrived at the conclusion that the respondent was guilty of professional misconduct in that he violated the Canons of Professional Ethics and the law of this State involving moral turpitude as reflected by Specifications Nos. 1, 6, 14, 19, 20, 21, and 24 and the evidence supporting them. The matter has been argued on behalf of the Committee of the Louisiana State Bar Association and the respondent and submitted to this 'Court for determination.
The Committee contends that the gravity of the offenses charged against respondent in Specifications Nos. 1, 6, 14, 19, 20, 21, and 24, which have been substantiated by evidence, are of such a grave nature that this Court has no other alternative than to enter a decree disbarring the respondent. The respondent denies that he is guilty of any misconduct.
Specification No. 1 charges that respondent is guilty of professional misconduct in:
“That on or about the 22nd day of June, 1951, while you were engaged in the active practice of law in the City of New Orleans, you did, with force and arms in the Parish of Orleans aforesaid, wilfully and unlawfully offer to accept a thing of value, to' wit: Seven Hundred Fifty Dollars ($750.00) and an automobile from one Benny Hayes, one Dewey Caryton and one John H. Hayes, with the intention that you, the said Mark W. Sackett, would, upon receipt of the said things of value, procure and cause one Louis Keeling, then a witness in Criminal District Court Case No. 136-541, entitled ‘State of Louisiana, Benny Hayes and Dewey Crayton’, to absent himself from the State and to refuse or be unavailable to testify as a witness in said prosecution.”
Our Commissioner’s summation of the testimony offered to support this complaint is amply supported by the record. After carefully considering the evidence and testimony offered to support this complaint, we have arrived at the same conclusion and adopt the Commissioner’s summation of the testimony and evidence as follows:
“The evidence shows Dewey Crayton and Benny Hayes were arrested early on the morning of June 21, 1951. They were taken to the Fifth District Police Station at approximately 3:55 A.M. and booked with aggravated battery and armed robbery. Subsequently, the robbery charge was changed to simple robbery. Mr. Louis Keeling was the victim of the battery and robbery. Later this very morning, Crayton and Hayes were visited by Mr. Sackett. In fact, they were seen three times by Mr. Sackett on June 21. Neither Crayton nor Hayes sent for Mr. Sackett. Hayes said a policeman brought Respondent to him. Both prisoners agree Mr. Sackett offered to get the prosecuting witness, Louis Keeling, to disappear or drop the charges against them for the sum of $750.00. Crayton says $500.00 would be for Keeling and $250.00 for Respondent’s fee. Hayes says Respondent told him Keeling wanted the price of a trip to sea, $750.00.
“At approximately 7:00 P.M. that same night, Mr. Sackett came from across the street and met Mr. Anselmo in front of the Fifth District Police Station. He engaged in a conversation with Mr. Anselmo and Mr. and Mrs. John FI. Hayes. Out of the hearing of Mr. and Mrs. Hayes, Respondent suggested to Mr. Anselmo that he be associated with Anselmo in the representation of Crayton and Hayes for half of the fee. Mr. Anselmo testified that at this time Respondent already knew he was in the case and Mr. Sackett suggested that Anselmo would do the work and he, Sackett, would take care of the rest. Mr. Anselmo further testified Mr. Sackett also already knew Crayton and Hayes had $3,000.00 in cash. Mr. Anselmo then quoted Mr. Sack-ett as saying, “I have connections and I can get this fellow’s mouth fixed, the'one that was beaten up.”
“Mr. and Mrs. John H. Hayes confirm their meeting with Respondent in front of the Fifth District Police Station but it was not the first time they saw Mr. Sackett that *663 day. They both testify that although they did not send for him, Mr. Sackett called at their home, 5513 Wilton Drive, earlier that same afternoon. Mrs. Hayes only saw Respondent at their home but did not hear his conversation with her husband. Mr. Hayes relates Mr. Sackett told him Dewey Crayton and Benny Hayes were in trouble and for about $500.00 he could help them. Respondent said he could get a couple of detectives to get Keeling drunk, have him change his story, and get the case thrown out of Court. When informed by Hayes that he did not have the $500.00, Mr. Sack-ett suggested the money be gotten by a second mortgage on his house.
“The next day Mrs. John H. Hayes called Mr. Grady C. Durham at his residence and asked him to represent Crayton and Hayes. Mr. Durham went to the Fifth District Police Station where he was told by Crayton and Hayes that they were visited by Mr. Sackett but that they had not sent for him. They also mentioned Mr. Anselmo was there but they did not hire him. Mr. Durham then testified, ‘They said that they had been informed by Mr. Sackett that he thought that by paying Mr. Keeling some money that he could get him to leave the city and not testify against him.’
“Mr. Durham made no use of this information until after Crayton and Hayes were convicted of simple robbery by a jury in Section E of the Criminal District Court. Mr. Keeling was a witness at the trial but he was not questioned by Mr. Durham about this matter. After his clients were convicted, Mr. Durham told Mr. Phil Trice, the Assistant District Attorney who prosecuted the case, of the suggestion made by Mr. Sackett to Crayton and Hayes concerning the prosecuting witness absenting himself from the city and not testifying against them. Then, a motion for a new trial was filed using this information as one of the reasons why a new trial should be granted. The motion was denied. Mr. Durham, when questioned about this on cross examination, explained that while Crayton and Hayes told him before the trial that Mr. Sackett had come to them and discussed the possibility of getting Keeling to leave town, the actual consideration of $750.00 was not mentioned until after the trial. It was only then that Mr. and Mrs. John H. Hayes corroborated his clients and signed affidavits to that effect.
“As soon as Mr. Phil Trice learned of this information from Mr. Grady Durham, he immediately began an investigation of the charge of corrupt influencing by Mr. Sackett. In company with another Assistant District Attorney, Mr. James Screen, and in the presence of a stenographer, written statements were taken from Crayton and Hayes.
“As a result of the said investigation, Mr. Sackett was charged in the Criminal District Court with violating R.S. 14:120.
“ ‘ * * * wilfully and unlawfully violate Revised Statute 14-120 relative to corrupt influencing, with respect to offering to accept a thing of value to-wit: money and an automobile, from one Benny Hayes, one Dewey Crayton and one John H. Hayes, with the intention that he, the said Sackett, would corruptly influence the conduct of one Louis Keeling, complainant in case No-136-541. * * * ’
“Respondent was convicted of this charge by Judge Frank Echezabal in Section D of the Criminal District Court. Fie was fined $250.00. On appeal to the Appellate Division I of the Criminal District Court, the judgment and sentence of the Trial Court was affirmed. Writs were refused by this Court and the Supreme Court of the United States. [Sackett v. State, 346 U.S. 869, 74 S.Ct. 125, 98 L.Ed. 379.]
“The record in the foregoing case was admitted in evidence before the Commissioner over the objection of Respondent. It was not admitted as a Prima Facie case as Respondent was not convicted of a felony. It was not admitted as *664 a proof of guilt of his misconduct. The record in the Criminal District Court was admitted by authority of the case of Louisiana State Bar Association v. Cawthorn, 223 La. 884, 67 So.2d 165. Furthermore, the Supreme Court has a right to examine any record in any Court of State under its supervisory jurisdiction, and this is particularly true where an officer of the Court is involved. The Court and the Commissioner have the right to compare the testimony in the record with the testimony of the witnesses in the disbarment proceeding.
“Respondent denies most of the facts as stated above. His version is expressed in his direct examination, (Volume III, pages 476^-84, Commissioner Testimony).
“There is considerable conflict in the testimony given by Respondent and his witnesses and the Bar Association witnesses. Several facts, however, seem to be well established.
“Respondent fails to give one good reason for his charge that the District Attorney’s Office wanted to get him. This charge is not proved by the evidence.
“It is apparent Mr. Sackett spoke to Crayton and Hayes at the Police Station, and at a time unsuspicious and of no moment or importance to them, Crayton and Hayes told their attorney, Mr. Grady Durham, that Mr. Sackett asked them for money to pay Keeling, the prosecuting witness, to leave the State or drop the charges against them.
“Mr. Durham corroborated this testimony when he appeared as a witness before the Bar Association Committee Hearing. He also corroborated this testimony when called as a witness by the Respondent in his trial in the Criminal Court.
“Mr. Anselmo corroborated the testimony of Crayton and Hayes when he stated: (Volume I, page 11, Committee Testimony)
“ ‘A. Well, insofar as the defense, I don’t think we even discussed it, but Mark said that the reason he thought the association would be good was that I could handle the court work and he would take care of the rest, which he said that he had connections and that he could give this man that had been beaten some money to have his mouth fixed and have him leave town so he wouldn’t be able to testify.’
“Mr. Sackett denies he visited the home of Mr. and Mrs. John H. Hayes at 5513 Wilton Drive on the afternoon of June 21, 1951, as was testified to by both Mr. and Mrs. Hayes before the Bar Association Committee Hearing; but when Respondent called Mrs. Hayes as his witness before the Commissioner, his counsel did not interrogate her about this important fact.
“In the short period of time that Respondent spoke to Mr. and Mrs. John H. Hayes in front of the Fifth District Police Station, it was impossible for him to learn all the facts he related to Mr. Anselmo.
“On direct examination, Respondent did not say Crayton and Hayes had told him Keeling’s mouth was injured or that some of his teeth were knocked out. Yet, he told Mr. Anselmo outside the Police Station about having Keeling’s mouth fixed and getting him out of town. Respondent’s testimony (Volume IV, page 619, Commissioner Testimony) indicates he learned the extent of Keeling’s injury from the newspaper. Respondent’s witness, Gladys Robertson, testified Mr. Sackett had the newspaper while having his after dinner coffee before he went to the Police Station. Mr. Sackett says he did not read it at that time.
“Mr. Sackett places Joseph James in the last cell in the Police Station, (Volume III,, page 479, Commissioner Testimony). He is contradicted by his own witness, Melchior Gerlinger, who placed Crayton and Hayes in the last cell. Officer Gerlinger says they were in No. 3 cell and Joseph James was in cell No. 2, (Volume I, page 232, Committee Testimony).
*665 “Respondent contended that at the time of his trial in the Criminal Court he did not know of the written statements of Crayton and Hayes taken by the District Attorney’s Office. His own witness, J. Paul Shelton, contradicts Respondent when he testified before the Commissioner that he told Mr. Sackett about these statements the first time he ever saw him, (Volume III, page 431, Commissioner Testimony).
“Mr. Sackett upon leaving Crayton and Hayes at the Police Station gave them his professional card and told them to have their relatives contact him, (Volume III, page 479, Commissioner Testimony). Why was it necessary for Crayton and Hayes to get in touch with their relatives about employing Mr. Sackett unless it was because Mr. and Mrs. John H. Hayes had previously been seen by Respondent as they stated in their testimony?
“Respondent attempts to corroborate his claim of being ‘framed’ by the District Attorney’s Office with the testimony of his witness, J. Paul Shelton. This witness appeared before the Commissioner and also testified for Mr. Sackett in the Criminal proceedings, but he did not appear at the Bar Association Committee Hearing. This witness was a fellow prisoner of Crayton and Hayes in the Parish Prison and he claimed to be a friend of Crayton. Crayton always sought his advice and he testified he advised Crayton to go along with the District Attorney and sign the statement that accused Mr. Sackett of corrupt influencing. Thereafter, he seeks Mr. Sackett, a person he does not know, and tells him that his friend, Dewey Crayton, signed a statement for the District Attorney wherein Respondent was accused of unlawful conduct. Mr. Shelton appeared a plausible witness on direct examination but after cross examination, it is shown his testimony is entitled to little or no weight.
“Respondent attempts to corroborate his statement that he did not visit Crayton and Hayes in the morning or afternoon of June 21, 1951, by the production of two police officers, Melchior Gerlinger and Thomas Calfin. The exceptional powers of recollection possessed by these officers when questioned about this case is not impressive when it is considered they could not remember the simplest facts not connected with this case. They could not remember any other events that happened in the Police Station on or about June 21, 1951. The witness, Gerlinger, admitted his memory was refreshed by Mr. Sackett a week before he appeared before the Bar Association Committee Hearing, (Volume I, page 257-258-259, Committee Testimony). Both these witnesses did not appear at the trial in the Criminal Court and did not testify before the Commissioner.
“Respondent attempts to corroborate his version of the conversation he had with Crayton and Hayes in the Police Station by his witness, Joseph James. James is not without interest as he is a client of Respondent. James was in an adjoining cell and his testimony goes no further than to show the gentleman next door asked Mr. Sackett if he was a lawyer. Mr. Sackett answered in the affirmative and said, ‘You got money?’ He said, ‘Yes, I got money.’ ‘Well, if you got money, I will get you out and fight your case.’. (Volume I, page 211, Committee Testimony.)
“Mr. Sackett’s version of the same conversation is more extensive and discusses the guilt or innocence of the prisoners, (Volume III, page 479, Commissioner Testimony). If James did hear the conversation, it seems he would have recollected the part that had to do with ‘fight’, ‘beat’, and ‘blood’.
“The witness, Louis Keeling, testified Respondent did not represent him and, further, that Mr. Sackett never attempted to bribe him. Attempts to bribe him were made by relatives of Crayton and Hayes. This testimony in no way effects what was said by Mr. Sackett to Crayton and Hayes in the Police Station on June 21, 1951, when he wanted to get in the case.
*666 “Respondent himself shows he wanted to be employed to represent Crayton and Hayes that night because he asked Mr. Anselmo to take him in the case.
“These witnesses for Respondent, George Mason, Andrew Theriot, and Leland Chustz, testified on behalf of Respondent before the Bar Association Committee Hearing. Two of these witnesses are serving time in the State Penitentiary for narcotic offences. The third is in the Parish Prison for possession of barbituates. Their testimony was used in an attempt to show Respondent was the victim of a ‘frame’ by the District Attorney’s Office. It may be because of the previous experience of the Commissioner that he feels this type of testimony by these three witnesses should be given little weight.
“The evidence on this Specification No. 1 preponderates in favor of the Louisiana State Bar Association and it is found that Respondent, Mr. Mark Sackett, is not only guilty of professional misconduct in violation of the Canons of Ethics, but he also violated the Laws of Louisiana relative to corrupt influencing.”
The respondent contends that the Commissioner did not give proper weight to the testimony of his witnesses. We are not impressed with the testimony of these witnesses owing to the nature of this testimony and the contradictions contained therein.
The respondent was charged in Specification No. 6 with soliciting representation or employment from one George M. Klein by calling upon him at the Fifth District Police Court and falsely representing that a personal friend of Klein had sent him. At that time Klein was under arrest charged with having narcotics in his possession and was being held at that police station.
The evidence shows that the respondent did go to the police station and represented to Klein that one of Klein’s friends had phoned him and asked him, the respondent, to go and see Klein with the view of representing him in the case. The respondent when asked by Klein who the friend was told him, “just a friend.” The respondent has never been able to tell the name of the person who supposedly phoned him. The Commissioner arrived at the conclusion that no one phoned the respondent to go and see Klein and that he went on his own accord and solicited employment from Klein. We think the conclusion of the Commissioner is correct.
In Specification No. 14 the respondent was charged with improper solicitation of employment. It appears that one Wilfred White was arrested and incarcerated in the Third District Police Station and charged with unlawful possession of marijuana. The record shows that respondent went to see White, with whom he was not acquainted, without any request on the part of White, with the view of obtaining employment. The evidence supports this complaint.
In Specifications Nos. 19 and 20 the respondent was charged with improper solicitation of employment. The testimony supporting these charges was taken by deposition because the witnesses were non-residents of the state. It seems that no cross-interrogatories were propounded by respondent.
The respondent objects to the use of these depositions on the ground that they are not admissible in evidence. The testimony contained in these depositions supports, in both instances, a solicitation of employment on the part of the respondent. It is not necessary for us to pass upon, whether or not these depositions are admissible because of our conclusions heretofore reached.
The respondent is charged in Specification No. 21 with soliciting employment from Maurice J. Tassin, who was held in the police station on a charge of operating" a motor vehicle while under the influence of intoxicating liquors. The evidence in the record supports this complaint.
While it is not necessary for a decision of this Court to pass upon Specification No» *667 24 in view of our conclusions heretofore reached, it can be said that it is apparent that the respondent did, as alleged, solicit ■employment in this instance from one Dr. R. P. Williams.
The conduct of the respondent shows a disregard of the ethics of the legal profession and the laws of this State. Under the proof adduced, we cannot escape the conclusion that he should not be permitted to engage in the practice of law.
For the reasons assigned, it is ordered, adjudged and decreed that the name of Mark William Sackett, respondent herein, he stricken from the roll of attorneys and his license to practice law in Louisiana be, and the same is hereby, cancelled. Respondent shall pay all costs of this proceeding.
SIMON, J., absent.