421 P.2d 781

**In the Matter of R. Deane MOYER, Attorney at Law.**

**No. 8083.**

Supreme Court of New Mexico.

Dec. 27, 1966.

William R. Federici, Santa Fe, for relator.

Chavez & Cowper, Belen, W. Peter McAtee, Albuquerque, for respondent.

OPINION

CARMODY, Chief Justice.

The Board of Bar Commissioners having recommended that R. Deane Moyer be disciplined under the provisions of § 21–2–1 (3) (1.01 to 3.01, incl.), N.M.S.A.1953, 1965 Pocket Supp., this matter is now before us for determination.

Briefly, the facts upon which the case arises are that respondent, as a practicing member of the bar, was employed by a Mrs. Lantz to probate the estate of her late husband. On July 6, 1961, the initial pleadings were prepared, to secure the probate of the will and to appoint Mrs. Lantz as special administratrix. In connection therewith, respondent secured an order from the district court of Bernalillo County, enabling him to collect a savings account in excess of $1,700.00. The money so collected was deposited by the respondent in his personal account, which was used both for professional and personal purposes. Within two weeks, the account was overdrawn, although later it became active, and ordinarily there was sufficient in the account to cover the deposit of the estate money. Certain costs of administration were paid out of these funds, and Mrs. Lantz received $300.00 as a widow's allowance. Thereafter, for more than two years, nothing further was done about the estate, and in September of 1963, a final account and report was prepared, signed by Mrs. Lantz, but retained in respondent's files. Finally, in August, 1965, more than four years after the respondent initially obtained the money, the final account and report was approved and Mrs. Lantz received all monies due her. A few days before this action was taken, the entire matter was referred to the Grievance Committee of the Albuquerque Bar Association, and the action taken by that group apparently led to the filing of this disciplinary proceeding.

The Board of Bar Commissioners made findings, somewhat more in detail than above related, and concluded that respondent unlawfully converted funds of the estate to his own use and that there was no legal justification for the undue delay in closing the estate. Based upon these conclusions, the commissioners recommended that R. Deane Moyer be suspended from the practice of law for an indefinite period, subject to termination upon presentation of facts showing rehabilitation, not sooner than thirty days after the effective date of the suspension.

Respondent does not seriously question the findings made by the commissioners, and, in essence, accepts them, but claims that the commissioners failed to consider mitigating circumstances and that therefore the recommended discipline is too severe.

Respondent calls to our attention what he terms "mitigating circumstances," basically consisting of the following: that respondent's business had greatly increased immediately prior to the acceptance of the Lantz

case; that, as a result thereof, he employed a non-resident attorney as clerk and office manager; that it subsequently developed that the non-resident attorney was dishonest, incompetent, and failed to properly manage the office affairs. Respondent argues in his brief that the "lack of experience, a sudden overburden of work and ill health, coupled with a dishonest and incompetent clerk and office manager, are * * * factors to be considered." Respondent admits, however, that he was grossly negligent in the conduct of his affairs and that he violated the Code of Ethics in comingling trust funds with his own.

 Even with the above admission, respondent places great reliance on the failure of the bar commissioners to make a finding that the acts were performed with a wrongful intent. Naturally, intent is a matter of substantial importance, but it is not the only circumstance to be considered, particularly where, as here, there is an admission of violation of the Canons of Ethics and of gross negligence.

 The following excerpts from our rules relating to discipline clearly indicate that maintenance of high standards of professional conduct requires more of a member of the bar than mere absence of intention to do wrong (§ 21–2–1(3), N.M.S.A. 1953, 1965 Pocket Supp.):

"2.01. * * * A license to practice law is a proclamation by this court that the holder is one to whom the public may entrust professional matters. * * *

"2.02. The court does not undertake by these rules to promulgate a code governing all causes for discipline. The enumeration here of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive, nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof by this court.

"* * * * * *

"2.04. The commission of any act contrary to honesty, justice or good morals, whether the act is committed in the course of his relations as an attorney or otherwise, and whether or not the act is a felony or misdemeanor, constitutes a cause for discipline. * * *

"A lawyer who has acted contrary to the standards of conduct set forth in the canons of ethics of the American Bar Association * * * may be found guilty of conduct constituting a cause for discipline."

We have carefully reviewed the transcript of the proceedings, including the testimony adduced by the respondent and his witnesses, and, considering the whole record, it appears obvious that the Board of Bar Commissioners considered all of the matters claimed to be in mitigation. This is implicit in the commissioners' recommendation that the suspension be subject to

termination after the relatively short period of thirty days.

Respondent next claims that the Bar Commissioners erred in refusing to admit or consider respondent's offer to submit himself to a polygraph test. In essence, this claim is that the polygraph test should have been admitted as touching upon the subjective good faith of respondent. We are somewhat at a loss as to what bearing a polygraph test might have had, even were it admissible—which it is not—in view of the respondent's own admission of his violation of the Code of Ethics. Nevertheless, this court has consistently held that the results of a polygraph test are inadmissible and we see no reason to retreat from this position. State v. Trimble, 1961, 68 N.M. 406, 362 P. 2d 788; State v. Lindemuth, 1952, 56 N.M. 257, 243 P.2d 325; and State v. Varos, 1961, 69 N.M. 19, 363 P.2d 629. The fact that the New Mexico legislature, by ch. 225, N.M. S.L.1963, has seen fit to license and regulate polygraphy in no sense raises that profession or occupation to such scientific dignity as would justify our recognition of the results of polygraph tests as admissible evidence.

Lastly, respondent urges that the testimony discloses that he has completely rehabilitated himself, paid all monies due to his clients, and reorganized his office so that such an occurrence will not recur. He therefore urges that the court impose severe censure instead of discipline. Suffice it to say that what we recently had occasion to state in In re Southerland, 1966, 76 N.M. 266, 414 P.2d 495, fully disposes of this contention. In that case, we said:

"Respondent also urges that some other courts have refused to follow the recommendation of suspension made by the referees and that we should do likewise. We are cited to the annotation in 96 A.L.R.2d 823, but it is our observation, after a study of the cases cited therein and other cases in addition, *that each case must be decided on its own facts*; and, even though the recommendation of the referees is not controlling upon us, it is entitled to great weight. * * *" (Emphasis added.)

In our view, the findings of the commissioners are fully supported and their recommendations should be approved, even though it is felt by some of the members of the court that the period allowed before the suspension may be terminated is more lenient than deserved.

R. Deane Moyer will be suspended from the practice of law before the courts of New Mexico for an indefinite period, subject to termination not earlier than thirty days after the effective date of this opinion upon a showing of facts that the said R. Deane Moyer has rehabilitated himself and will observe the high standards of professional conduct required of him as a member of

the State Bar of the Supreme Court of the State of New Mexico. It is so ordered.

NOBLE, MOISE, and COMPTON, JJ., concur.

E. T. HENSLEY, Jr., Chief Judge, Court of Appeals (dissenting).

"A court called upon to discipline an attorney for non-professional misconduct faces a troublesome and distasteful task. Nevertheless, it has been generally assumed that if the house is to be cleaned, it is for those who occupy and govern it, rather than for strangers, to do the noisome work." 5 Natural Resources Journal, 299, People ex rel. Karlin v. Culkin, 248 N.Y. 465, 162 N.E. 487, 493.

Final determination has been made that the respondent unlawfully converted funds of an estate to his own use in 1961. There has been no prosecution for the acts containing the elements of embezzlement, and it is not the function of this court to impose punishment.

The respondent now urges that he be censured rather than suspended for any period of time. This request may be made in good faith, but it causes the writer to doubt that rehabilitation has been accomplished. The Board of Bar Commissioners recommended that the respondent be suspended from the practice of law for an indefinite period, but for not less than thirty days. The majority

have adopted the recommendation and will impose the sanction in its mildest form.

It is the opinion of the writer that one of the principal functions of an integrated bar is to achieve and maintain high standards of professional excellence, both in moral fitness and ability. Believing that the disposition of this proceeding as finally resolved by the majority falls far short of our objective and thus does a disservice to the Bar and to the Bench,

I dissent.