363 P.2d 629

STATE of New Mexico, Plaintiff-Appellee,

v.

Leo M. VAROS, Defendant-Appellant.

No. 6672.

Supreme Court of New Mexico.

July 28, 1961.

**20**

Bertrand B. Prince, Santa Fe, for appellant.

Hilton A. Dickson, Jr., Atty. Gen., B. J. Baggett, Asst. Atty. Gen., Fred M. Calkins, Jr., Spec. Asst. Atty. Gen., for appellee.

PER CURIAM.

On motion for rehearing, the original opinion is hereby withdrawn, and the following substituted therefor:

CARMODY, Justice.

The defendant was found guilty of voluntary manslaughter by a jury in Taos County, and he appeals.

The only question raised by appellant that needs to be discussed relates to whether the defendant was prejudiced by the introduction of certain testimony as to a polygraph test. We hasten to add that we are not in this case dealing with the problem of the admissibility of the test as such, its not being argued or briefed. The attorney general takes the position that "we do not believe that any good purpose would be served in debating the merits of giving or withholding the results of a lie detector test from a jury, since it is our position that the results of the polygraph test were not given to the jury." The defendant, on the contrary, says that the results were given to the jury by indirection in the testimony received.

The instant case was argued and the original opinion announced before our decision in State v. Trimble, 362 P.2d 788. In that case, we specifically held that evidence of

the results of a polygraph test was not admissible over objection  Thus, we will consider this case on rehearing in the light of the rule just announced, and summarize the facts as follows.

The defendant and a group of friends were involved in a fight with another group of young men, and one of the second group was killed by a knife wound in the heart. Upon being questioned, the defendant first denied having a knife, then the following day he made a written statement admitting that he had pulled out a knife after being knocked to the ground by the other young men, but that he did not remember whether he had stabbed anyone or not.  This statement was made to the district attorney and the district attorney's special investigator, immediately before the defendant was given a so-called lie detector test.  After the test was given, the defendant himself wrote at the end of the statement, "I now admit I stabbed somebody but I don't know who." During the trial, the operator of the polygraph machine was called as a witness for the state, and testified generally as to the operation of the machine.  The court carefully restricted his testimony so that no evidence was admitted as to any questions asked, any answers made by the defendant, or the defendant's reactions to the test. However, an examination of the record of this testimony makes it quite plain that the jury was given the impression that through the use of the machine the defendant was shown to have been lying.  A few excerpts of the testimony serve to illustrate what was conveyed to the jury:

"A.  *  *  *.

"Insofar as my findings are concerned, I have never yet been found to be wrong, but I have been found to be right.

*       *       *       *       *       *

"Q.  Then as the test progressed did you tell him how he was coming along? A.  Yes, sir, I did.

"Q.  And as a result of taking that test did he make any further admissions?  A.  Yes, sir, he did.

*       *       *       *       *       *

"Q.  And that's all that was asked. And as a result of this test he indicated that he wished to add to his statement? A.  Yes, sir.

*       *       *       *       *       *

"Q.  Can you tell the jury in this ordinary common language what exactly you told him?  A.  I can break it down as much as I possibly can.  I told him that if he was not guilty that he had not one iota of anything to be afraid of.  That if he was guilty I would do everything within my power to hang it around his ears, was the words that I used.  I think he under-

stood that. But I told him that if he was not guilty that I would do everything within my power to turn him loose; that if it was showed that he was not guilty I would even come up here free of charge and do my best and testify for him.

"The Court: Mr. Hathaway, when you speak of the word guilty do you mean it in the sense of being responsible for inflicting the wound, you are not passing on his guilt or innocence?

"The Witness: No. Just whether or not he had done any stabbing or not. That was the thing that I was pursuing.

"Q. You have used this maching (sic) in thousand (sic) of cases? A. Yes, sir.

"Q. And you said all of them had been right? A. I have never been proven wrong.

\* \* \* \* \* \*

"A. I have never yet had a person that I found innocent proven guilty."

To "cap it all off," on redirect the district attorney asked the witness about another case not remotely related to the trial, which could only have served to impress the jury with the so-called infallibility of the polygraph. This testimony appears as follows:

"Q. Mr. Hathaway, at my request I believe you examined \* \* \*

you've made examinations in other cases haven't you? A. Yes, sir.

"Q. Do you remember the fellow who had the job at the penitentiary? A. Yes, sir.

"Q. Did he pass the test, or did he flunk it? A. He passed it, he's still got his job.

"Q. And no charges were filed against him? A. No, sir.

"Q. That's all."

We realize that there are cases which have ruled that confessions obtained through the use of a lie detector does not of itself render them inadmissible. State v. Dehart, 1943, 242 Wis. 562, 8 N.W.2d 360; Commonwealth v. Hipple, 1939, 333 Pa. 33, 3 A.2d 353; and Webb v. State, 1956, 163 Tex.Cr.R. 392, 291 S.W.2d 331. But this is not the question here. The statement and the addition thereto are apparently admissible and could have been proven by the state without reference to the test on the machine. The fallacy here was allowing the jury to have the detailed account of the machine and the circumstances of its use, when this evidence could only have had a prejudicial effect on the defendant.

■ We are fully cognizant that no proper objection was made by counsel for the

defendant during the presentation of the doubtful testimony. However, there can be no question but that the trial court was fully alerted to the true situation in view of the various exchanges between the court and counsel during the time the witness was on the stand, and in view of the very apparent recognition by the court of the importance of restricting the testimony within certain limits. Where a case is as close as this one, we may consider errors in the record notwithstanding failure of counsel to properly save a question for review, but we do not want it implied that we will reverse a conviction which is manifestly correct merely because defense counsel did not try the case as well as he might have. See, People v. Nowak, 1939, 372 Ill. 381, 24 N.E.2d 50.

The net effect of the testimony was to cast doubt upon the truth and veracity of the defendant in a manner not countenanced by the courts. The evidence was calculated to prejudice the jury by implying that this mechanical device was the ultimate in tests for the truth. The verdict of the jury was tainted thereby, and we cannot allow it to stand. The defendant did not have a fair trial. See, People v. Nowak, supra.

Although we realize that the proof in the case before us is not the same, the cases of People v. Wochnick, 1950, 98 Cal.App.2d 124, 219 P.2d 70, and Leeks v. State, 1952, 95 Okl.Cr. 326, 245 P.2d 764, are strikingly similar and both resulted in reversal be-

cause of the prejudice to the defendant. Actually, in People v. Wochnick, supra, the trial court instructed the jury not to consider the results of the test, whereas here there was no warning instruction sought or given. Also, in People v. Aragon, 1957, 154 Cal.App.2d 646, 316 P.2d 370, 378, the court said:

"If the result of the lie detector test is inadmissible in the first instance, surely no one would contend that the results can be cloaked in the raiment of an accusatory statement and then slipped into evidence. If we were to hold that such a course is proper we would have sanctioned the receipt of damaging evidence which, but for such masking, could not be heard by the jury. We believe that the prosecution should not be permitted to introduce into evidence by indirection what would be highly improper if done directly. Our system of jurisprudence is not constructed upon such a foundation. * * *"

We do wish to add, however, that the objectionable testimony in the Aragon case, supra, was apparently far more serious than that allowed in evidence in the instant case.

The rule of People v. Wochnick, supra, and People v. Aragon, supra, was approved

in the later case of People v. Parrella, 1958, 158 Cal.App.2d 140, 322 P.2d 83, although there, after announcing approval of the various rules, the court found that there was invited error, which, together with a full warning by the trial court and strong evidence of guilt, resulted in there being no prejudice. Such exceptions are not present in this case.

The state urges that the defendant was not prejudiced, because upon cross-examination the defendant, in effect, admitted the same matters included in his statement as amended by him. However, this does not cure the initial error, which was the implanting in the minds of the jury the defendant's claimed falsification as shown by the machine.

On retrial, the other claimed errors should not occur, and we therefore do not deem it necessary to discuss them.

From what has been said, the conviction of the defendant will be reversed and the cause remanded for retrial. It is so ordered.

COMPTON, C. J., and MOISE, J., concur.

CHAVEZ and NOBLE, JJ., not participating.