490 P.2d 471

STATE of New Mexico, Plaintiff-Appellee,

v.

William Byron MOSIER and James.W. Mordecai, Defendants-Appellants.

No. 661.

Court of Appeals of New Mexico.

Sept. 17, 1971.

Rehearing Denied Oct. 12, 1971.

Joseph (Sib) Abraham, Jr., Alice L. Dwyer, El Paso, Tex., Robert W. Ward, Lovington, for defendants-appellants.

David L. Norvell, Atty. Gen., Frank N. Chavez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Defendants, Mosier and Mordecai, were convicted of possession of more than one ounce of marijuana. Defendant Mosier was also convicted of possession of LSD. They appeal asserting (1) the trial court lacked jurisdiction; (2) failure to grant a change of venue denied them the right to a fair and impartial trial; (3) the jury deliberated for ten minutes and the shortness of time constituted jury misconduct; (4) the chemical tests were not valid; (5) there was no chain of custody of the evidence introduced; (6) illegally seized evidence was used against them.

We affirm.

## LACK OF JURISDICTION.

It is defendants' position that the offenses, if any were committed, occurred in the State of Texas and under the rule of "lex loci" the State of New Mexico had no jurisdiction to try the defendants for the offenses. We do not decide whether any offenses committed by the defendants occurred in the State of Texas. The issue is whether there is evidence of possession in New Mexico so as to support the conviction for violation of laws of the State of New Mexico.

We view the evidence in the light most favorable to support the verdict, resolving all conflicts and reasonable inferences in favor of the verdict. State v. Sedillo, 82 N.M. 287, 480 P.2d 401 (Ct.App.1971). For possession the State must prove physical or constructive possession of the object, with knowledge of the object's presence

and narcotic character. State v. Maes, 81 N.M. 550, 469 P.2d 529 (Ct.App.1970). Knowledge however was not an issue because defendants admitted knowing about the general scheme in which the undercover agent was to carry several kilos of marijuana from El Paso to Hobbs. It is defendants' claim that the possession in New Mexico was not proved and since possession was an element of the charge the trial court was without jurisdiction.

■ The undercover agent testified that the defendants came to Hobbs with him at the direction of a third individual who had to spend some time with "a chick" in El Paso. Defendants argue that the evidence conclusively shows that the possession of the marijuana changed hands in Texas when several kilos of marijuana were given over to the undercover agent and placed in the trunk of his car. Nevertheless, the undercover agent testified that a brother of defendant Mordecai directed the two defendants to accompany the undercover agent to Hobbs where they were to sell several kilos. The undercover agent stated explicitly that the defendants came to Hobbs to sell marijuana.

There is evidence that defendants helped unload the marijuana after arriving in Hobbs, and helped carry it to where it was stored. There is evidence that, in Hobbs, defendants "manicured" some of the marijuana; that one of them rolled and partially smoked a joint; and that both defendants checked on the undercover agent when the agent removed some of the marijuana. This evidence clearly establishes that the defendants were in possession. Possession means the care, control and management on the occasion in question. State v. Maes, supra; State v. Favela, 79 N.M. 490, 444 P.2d 1001 (Ct.App.1968).

■ The record also shows that defendant Mosier had possession of the LSD in the State of New Mexico. There was evidence that Mosier had the LSD tablets in his possession in El Paso, brought them to Hobbs and stored the tablets with the marijuana at the time the marijuana was stored. This testimony was sufficient to establish possession of LSD by defendant Mosier. State v. Maes, supra.

## CHANGE OF VENUE.

■■ It is defendants' contention here that the trial court's refusal of a change of venue on the grounds of pre-trial publicity jeopardized their right to a fair and impartial trial.

The trial court held a lengthy hearing on the motion for a change of venue. Both the defendants and the State called witnesses. Several witnesses testified that they had no reason to believe that the defendants would not receive a fair trial in Lea County. Some witnesses remembered reading about drug related items in the newspapers but did not recall the details or the names of the defendants. Other witnesses testified that it would be difficult to obtain a fair and impartial hearing in Lea County because of the strong feelings about narcotics.

After hearing the witnesses and viewing the exhibits introduced the trial court denied the motion for a change of venue without findings. Only an oral request for findings was made and none were submitted. Accordingly, this case appears to be controlled by State v. Fernandez, 56 N.M. 689, 248 P.2d 679 (1952) wherein the court stated that unless specific findings were requested the absence of findings is waived. However, we have received the evidence before the court in connection with the motion, and there is evidence supporting the ruling denying the motion. The ruling was not an abuse of discretion. See Deats v. State, 80 N.M. 77, 451 P.2d 981 (1969).

## JURY DELIBERATION.

■ Defendants contend they should be granted a new trial because the jury deliberated for only ten minutes and that such a short time for deliberation constitutes jury misconduct. Defendants contend that although there are no cases directly in point

that a "rational mind can reach no other conclusion." We do not agree.

One of defendants' contentions is that a jury should at least take sufficient time to read the instructions prior to rendering the verdict and that ten minutes is not sufficient time to read the court's instructions. This argument is based on the false premise that the only way for the jury to appraise itself of the instructions is to read them. Such is not the case. The instructions are read to the jury by the court and the written instructions need not go to the deliberation room unless there is a request. Section 41–11–12, N.M.S.A. 1953 (Repl. Vol. 1964); State v. Beal, 48 N.M. 84, 146 P.2d 175 (1944). Compare the rule in criminal cases, § 21–1–1(51) (2) (g), N. M.S.A. 1953 (Repl.Vol.1970) with the rule in civil cases, § 21–1–1 (51) (1) (g), N.M. S.A. 1953 (Repl.Vol.1970). Here the record shows no request by either party.

Furthermore, there is no rule requiring the jury to deliberate for any particular length of time. Wall v. United States, 384 F.2d 758 (10th Cir. 1967). The amount of time to be spent in deliberation is a matter for the jury to determine. State v. Peck, 429 S.W.2d 247 (Mo.1968) and there is nothing in the nature of things to prevent a jury from being so overwhelmed by the evidence that they need not leave the jury box to reach a verdict. See State v. Lumbra, 122 Vt. 467, 177 A.2d 356, 91 A.L.R.2d 1235 (1962); Commonwealth ex rel. Sharpe v. Burke, 174 Pa.Super. 350, 101 A.2d 397 (1953).

Defendants' fourth point challenges the validity of the chemical tests; questions the chain of custody of the marijuana introduced into evidence; and urges that the marijuana be suppressed as being illegally seized evidence.

## VALIDITY OF THE TESTS.

■ Dr. Schoenfeld, a biochemist and toxicologist, testified that two of the sacks, exhibits 1 and 7, contained marijuana. This testimony was based on a chemical analysis in his laboratory. Defendants point out that the marijuana actually used in the testing was about one gram and the undercover agent testified that he put one ounce (over 28 grams) of marijuana into one of the sacks, and that it could have been one gram of this marijuana that was tested.

Assuming this is true as to one of the sacks, this still does not affect the proof as to the second sack tested. The undercover agent co-mingled marijuana in only one sack and in fact the contents of both sacks tested proved to be marijuana.

Defendants likewise point out that exhibits 2 through 5 were not tested. The expert, in open court, identified those four exhibits as containing marijuana based on sight and smell. Assuming but not deciding that his open court identification was not adequate, the possession of the two tested sacks of marijuana was adequate to support the conviction.

■ As to the LSD, exhibit 6 presents no identity problem. The expert testified that he tested 6 of 65 pills, a representative sample, and found that they contained a "relatively low level of LSD."

## CHAIN OF CUSTODY.

■ The record is clear that Dr. Schoenfeld went to Hobbs and picked up exhibits 1, 6 and 7 from Lt. Fowler for identity analysis. In court these exhibits were identified by Lt. Fowler by marks he had made on them after they were seized. Exhibit 1 and 7 were identified in court by Officer Vance Adams of the State Police as those he picked up from Dr. Schoenfeld and kept in his office in Roswell until the day of trial. Exhibit 6, the LSD, was received from Dr. Schoenfeld by Lt. Fowler who identified the tablets as the same ones he had given to Dr. Schoenfeld for analysis, and who kept them until trial.

Chain of custody of exhibits 2 through 5 is established by testimony that they were

kept locked up at Hobbs after seizure until trial, and as was discussed above these exhibits are not necessary for upholding the conviction.

The chain of custody was sufficiently established. Compare State v. Harrison, 81 N.M. 623, 471 P.2d 193 (Ct.App.1970).

## ILLEGAL SEIZURE.

Defendants' claim that their arrest without a warrant was unlawful, not supported by probable cause and that the search and seizure of narcotic drugs used to convict them was therefore unlawful. Since the issue of probable cause for arrest is raised, not as defense in itself, but as a basis for the claim that the marijuana was seized pursuant to an unlawful arrest, in light of our resolution of the search and seizure issue we need not address ourselves to probable cause. Our discussion is limited to a seizure pursuant to an arrest.

■ The record reveals that upon arrival in Hobbs the undercover agent instructed his girl friend to call Lt. Fowler and tell him about the drugs. The following morning Lt. Fowler and several other detectives went to the undercover agent's home. The undercover agent told Lt. Fowler where to find the narcotics. After Lt. Fowler had seen the sacks of marijuana and pills, he ordered the arrest of defendants. There was no search pursuant to an arrest. The finding of the marijuana and LSD in the undercover agent's home after the officers were informed by the undercover agent was hardly a search, but if it was a search it was by permission of the owner of the house. A search after permission is given by one who has authority is valid. State v. Harrison, 81 N.M. 324, 466 P.2d 890 (Ct.App.1970); State v. Kennedy, 80 N.M. 152, 452 P.2d 486 (Ct. App.1969).

Affirmed.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.