521 P.2d 138

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Gilbert ALDERETE, Defendant-Appellant.**

**No. 1287.**

Court of Appeals of New Mexico.

Feb. 27, 1974.

Rehearing Denied March 25, 1974.

Steven P. Michael, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Lee Griffin, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted and sentenced for possession of heroin in violation of § 54–11–23, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, 1973 Supp.). Defendant appeals. We affirm.

A. *The results of polygraph examinations were not admissible in evidence.*

Defendant moved the court that the results of polygraph (lie detector) exami-

nation be admitted in evidence. The State objected because the results were hearsay and the polygraphist was not qualified to testify as an expert.

Defendant tendered the testimony of a polygraphist and the results of his examination. The trial court denied the tender.

We agree with the State's objection that the polygraphist was not qualified to testify. The polygraphist did not produce his polygraph records in court. Only the results were presented. Neither did the testimony establish that the polygraphic test was accepted as a scientific principle in the expert's profession.

### (1) Qualifications of a polygraphist

The establishment of the qualifications of a polygraphist is very burdensome. "The Polygraphy Act does not apply to research in the fields of medicine or psychology." Section 67–31A–10, N.M.S.A.1953 (Repl.Vol. 10, pt. 1, 1973 Supp.). For qualifications of a psychologist, see "Professional Psychologist Act," Sections 67–30–1 to 67–30–17, N.M.S.A.1953 (Repl.Vol. 10, pt. 1, 1973 Supp.).

■ The Polygraphy Act does not contain qualifications sufficient to meet the test under consideration. The recommended standards have been set by Reid and Inbau, Truth and Deception (1966), 235. These standards have been accepted in the courts. United States v. DeBetham, 348 F.Supp. 1377, 1386 (D.C.Cal.1972), aff'd 470 F.2d 1367 (9th Cir. 1972), cert. denied 412 U.S. 907, 93 S.Ct. 2299, 36 L. Ed.2d 972 (1973).

The trial court said:

In the Court's opinion, a qualified examiner can be adequately identified without consuming more court time than is presently necessary to qualify any physician or psychiatrist; and an incompetent examiner can be discovered through the ordinary diligence expected of counsel in preparation for cross-examination. Definite standards of examiner qualifications have been recommended for this purpose. For example, Reid and Inbau propose that:

Before permitting the results to be admitted as evidence in any case, however, the courts should require the following: (1) That the examiner possess a college degree. (2) That he has received at least six months of internship training under an experienced, competent examiner or examiners with a sufficient volume of case work to afford frequent supervised testing in actual case situations. (3) That the witness have at least five years' experience as a specialist in the field of polygraph examinations. (4) That the examiner's testimony be based upon polygraph records that he produces in court and which are available for cross-examination purposes.

Effective cross-examinations could be based upon such standards, as well as upon the particular examiner's testing technique and reputation for competence and integrity. Nor should the importance of the last mentioned subject be underestimated in this regard, since the natural desire to protect his most essential reputation, which would be on trial in every case, would necessarily render every examiner most cautious in his diagnoses.

■ Psychology and physiology are important aspects in qualifying an examiner. The polygraphist did not qualify within the boundaries of the above standards. The results of the examination were not admissible in evidence.

### (2) The polygraphic test is now accepted as a scientific principle. Admission is within discretion of trial court.

To date, New Mexico follows the exclusion rule. Evidence of a polygraph examination is not admissible over objection. State v. Chavez, 80 N.M. 786, 787, 461 P. 2d 919 (Ct.App.1969); 82 N.M. 238, 478 P.2d 566 (Ct.App.1970); Chavez v. State, 456 F.2d 1072 (10th Cir. 1972); State v. Varos, 69 N.M. 19, 363 P.2d 629 (1961);

State v. Trimble, 68 N.M. 406, 362 P.2d 788 (1961); Annot., 53 A.L.R.3d 1005, 1010 (1973). It may be admitted by stipulation. State v. Turner, 81 N.M. 450, 455, 468 P.2d 421 (Ct.App.1970); State v. Turner, 81 N.M. 571, 576, 469 P.2d 720 (Ct.App.1970).

*Trimble,* supra, stated, 68 N.M. at page 407, 362 P.2d at page 788, "Presently, the question [on admission of a polygraph test] requires a negative answer." [Emphasis added]. This means that courts of review must wait until polygraphy is accorded general scientific recognition by psychologists and physiologists. See State v. Lindemuth, 56 N.M. 257, 273, 274, 243 P.2d 325 (1952). "Certain scientific principles are now used in evidence that were not formerly admissible. But such principles were not used until their validity was demonstrated and accepted. Ballistic tests are now admissible . . . ." State v. Sneed, 76 N.M. 349, 354, 414 P.2d 858, 861 (1966). The results of blood tests are admissible. State v. Sweat, 78 N.M. 512, 514, 433 P.2d 229 (Ct.App.1967). Tests on LSD pills are admissible. State v. Mosier, 83 N.M. 213, 216, 490 P.2d 471 (Ct.App. 1971).

■ We can no longer say "[t]hat polygraphic evidence is never admissible." United States v. DeBetham, 470 F.2d 1367 (9th Cir. 1972), supra; United States v. Urquidez, 356 F.Supp. 1363 (D.C.Cal.1973). The State and the defendant can waive their rights to the exclusion of polygraphic evidence. State v. Chavez, 82 N.M. 238, 478 P.2d 566, supra.

We have held that it was in the discretion of the trial court to admit testimony of an experiment, although it was not scientifically accurate. State v. Rose, 79 N. M. 277, 442 P.2d 589 (1968), cert. denied 393 U.S. 1028, 89 S.Ct. 626, 21 L.Ed.2d 571 (1968).

■ Scientific recognition of polygraphic tests has now arrived. A proper foundation for the testimony must first be established. The polygraphist must be qualified as an examiner. The proposed test must be accepted in his profession. The proposed test must show that it has a reasonable measure of precision in its indications. When this foundation is laid, the admission in evidence of a polygraphic test is within the discretion of the trial court. United States v. Alvarez, 472 F.2d 111, 113 (9th Cir. 1973); United States v. De-Betham, supra; United States v. Lanza, 356 F.Supp. 27, 30 (D.C.Fla.1973); United States v. Urquidez, supra; United States v. Chastain, 435 F.2d 686, 687 (7th Cir. 1970); United States v. Wainwright, 413 F.2d 796 (10th Cir. 1969), cert. denied 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1969); Dabrowski, The Polygraph Revisited: An Argument For Admissibility, 4 Suffolk U.L.Rev. 111 (1969); Kaplan, The Lie Detector: An Analysis Of Its Place In The Law Of Evidence, 10 Wayne L.Rev. 381 (1964).

■ This rule is fair to the State and the defendant. Each should have the right to rely on the examination. If the polygraphic test is reliable as to the guilt of the accused, it is equally reliable as to the innocence of the accused. We should no longer deny the State the right to exercise this privilege when a defendant *voluntarily* submits to the examination. The lie detector test must be *voluntary* because to compel a person to submit to testing to determine his guilt or innocence, whether willed or not, evokes the spirit and history of the Fifth Amendment. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, 916 (1966).

Affirmed.

It is so ordered.

WOOD, C. J., specially concurring.

LOPEZ, J., specially concurring.

WOOD, Chief Judge (specially concurring).

I agree with the result reached by Judge Sutin. I disagree with the way the result is reached.

*Admissibility of polygraph test results.*

The first issue is whether the results of polygraph tests are admissible. In holding that they are admissible, Judge Sutin states that the tests are now accepted as a scientific principle. This statement appears to be in answer to Frye v. United States, 54 App.D.C. 46, 293 F. 1013, 34 A.L.R. 145 (1923). *Frye* had held that the scientific principle of the tests was not sufficiently established in the particular field in which it belongs. The *Frye* holding has been viewed as preventing the admission of polygraphic test results until there was general scientific acceptance of the tests.

Another view of *Frye* is that polygraphic test results were inadmissible at the time *Frye* was decided (in 1923) because of its novelty at that time and because of the lack of acceptance at that time. On this basis, test results had little probative value. McCormick on Evidence, at 363–364 (1954). Under this view, the admissibility of test results is to be determined on the same basis used for the admissibility of any scientific evidence. McCormick, supra; United States v. DeBetham, 348 F. Supp. 1377 (S.D.Cal.1972), aff'd 470 F.2d 1367 (9th Cir. 1972), cert. denied 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973). See also United States v. Wainwright, 413 F.2d 796 (10th Cir. 1969), cert. denied 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1970).

In my opinion, this second view of *Frye* was the view of the New Mexico Supreme Court when it followed *Frye* and held test results were not admissible in State v. Trimble, 68 N.M. 406, 362 P.2d 788 (1961). Accordingly, test results are admissible if it is shown that the results do have probative value.

To establish such probative value, there must be expert testimony that the test involved is an accepted one in the expert's profession and the test has a reasonable measure of precision in its indications. United States v. Wainwright, supra. There must be evidence "demonstrative of the polygraph's substantial reliability and acceptance." United States v. DeBetham, supra.

Thus, I would not base admissibility of the tests on the concept of "general scientific acceptance." Rather, in my opinion, the requirement for admissibility is evidence that the tests are reasonably reliable, reasonably precise and evidence that the tests are substantially accepted by experts whose competence includes the subject matter of the tests. The tests were properly excluded in this case because there was no such evidence.

*Qualifications of the expert.*

In addition to evidence concerning reliability, precision and acceptance, there must be evidence that the polygraph examiner is an expert in giving and interpreting the tests. DeBetham, supra. The second issue in this case goes to the qualifications of the examiner.

The most important factor involved in the use of any polygraph "is the ability, experience, education, and integrity of the examiner himself." Reid & Inbau, Truth and Deception, at 4 (1966). "For, it is the examiner who must screen out the 'unfit' examinee, conduct the important pre-test interview (which is essential to the proper preparation of the actual test questions), and supervise the environment of the test to eliminate possible distortive influences, as well as ask the questions and interpret the resulting polygrams." *DeBetham,* supra.

Judge Sutin's opinion quotes *DeBetham,* supra, concerning the qualifications for an examiner and holds that the examiner in this case was not qualified. Although I agree the examiner was not qualified to testify concerning test results in this case, I do so on a very limited basis. Defendant sought to introduce the examiner's conclusions from the tests but did not produce the polygraph records in court or explain why they were not produced. Thus, the basis was missing for giving a satisfactory explanation as to how the examiner arrived at his opinion. See Dahl v. Turner,

80 N.M. 564, 458 P.2d 816, 39 A.L.R.3d 207 (Ct.App.1969). For this reason, the examiner was not qualified to testify.

I cannot join in Judge Sutin's opinion concerning the qualifications of an examiner because it utilizes (in the quotation from *DeBetham,* supra) standards recommended by Reid & Inbau, supra, at 257. Those recommended standards—a college degree, six months of internship training and five years experience as a specialist in the field of polygraph examinations—should not be designated as legal requirements to qualify an examiner to testify in the absence of any evidence as to the reasons for these particular standards. *DeBetham,* supra, points out that there is "little standardization of training among practicing polygraph examiners." The recommended standard would require a college degree. Because of the variety of subjects that may be studied in obtaining a college degree, wouldn't the subjects studied be of more importance than the degree itself? Could not experience provide the equivalent of formal study of those subjects?

I do not suggest what the minimum qualifications should be. I do oppose a statement of minimum standards prior to a showing as to the need for those standards.

I concur in the result only.

LOPEZ, Judge (specially concurring).

I fully concur in the opinion of Chief Judge Wood. I wish to add that I feel that polygraph testing is potentially of great value to the judicial processes of this state. When we are presented with a proper record meeting the requirements set forth in Judge Wood's opinion, I would hold this type of evidence admissible. I encourage counsel in future cases to develop such a record.