532 P.2d 912

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Sammy T. DORSEY, Defendant-Appellant.**

**No. 1469.**

Court of Appeals of New Mexico.

Feb. 12, 1975.

Certiorari Issued March 11, 1975.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Don Klein, Jr., Associate Appellate Defender, Santa Fe, for appellant.

Toney Anaya, Atty. Gen., Ralph W. Muxlow II, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of murder in the second degree. Section 40A–2–1(B), N.M.S.A.1953 (2d Repl.Vol. 6). Seven issues are presented. Only one of the issues has merit. That one issue is whether the trial court erred in granting the Assistant District Attorney's motion to exclude opinion evidence concerning the results of a polygraph examination. We hold the exclusion of this evidence was error because of the New Mexico Rules of Evidence, see §§ 20–4–101 to 20–4–1102, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973), and because of the requirements of due process in criminal trials.

State v. Lucero, 86 N.M. 686, 526 P.2d 1091 (1974) states:

"This court has held to the rule which admits polygraph test results when each

of these requirements are met: 1. The tests were stipulated to by both parties to the case; 2. When no objection is offered at trial; 3. When the court has evidence of the qualifications of the polygraph operator to establish his expertise; 4. Testimony to establish the reliability of the testing procedure employed as approved by the authorities in the field; and 5. The validity of the tests made on the subject. State v. Chavez, 82 N.M. 238, 478 P.2d 566 (Ct.App.1970); State v. Chavez, 80 N.M. 786, 461 P.2d 919 (Ct.App.1969); Chavez v. State, 456 F. 2d 1072 (10th Cir. 1972); State v. Varos, 69 N.M. 19, 363 P.2d 629 (1961); State v. Trimble, 68 N.M. 406, 362 P.2d 788 (1961)."

The trial court's order excluding the evidence contains detailed findings. Unchallenged findings are to the effect that items 3, 4 and 5 of *Lucero* were met. Concerning the qualifications of the polygraph operator, the order contains an extensive recitation of the operator's training and experience. The order states: "The person who administered the polygraph examination to the Defendant is a person skilled in this art and science and is qualified to interpret the results and to state that interpretation in the form of an opinion." Concerning the reliability of the testing procedure, the order states that the test was "well conducted" and was "conducted under controlled circumstances". Concerning the validity of the test results, the order states that not more than six percent of well conducted tests result in an inconclusive interpretation, that is, "the examiner cannot tell if the subject is or is not telling the truth."

The contested issue in this appeal concerns items 1 and 2 of *Lucero*. Those items require that the tests be stipulated to by the parties and that there be no objection when the test results are offered at trial. In this case there was no stipulation and it was the Assistant District Attorney who successfully sought the order excluding the evidence.

Items 1 and 2 of *Lucero* provide for the mechanical exclusion of evidence. Why should the evidence be excluded once items 3, 4 and 5 are met? The decisions cited in *Lucero* indicate the exclusionary rule applies because the test: (a) has not gained sufficient standing and scientific recognition among physiological and psychological authorities, State v. Trimble, supra; and (b) has not gained general acceptance in the particular field in which it belongs, State v. Chavez, 80 N.M. 786, 461 P.2d 919, supra. See also State v. Chavez, 82 N.M. 238, 478 P.2d 566, supra.

The reasons for the exclusionary rule are answered in this case on two grounds —the trial court's order and the concession of the Assistant Attorney General during oral argument.

The trial court found: "The polygraph is a scientific device that measures and records a number of involuntary body responses to stress. It measures and records blood pressure changes, pulse changes, respiration changes, as well as changes in the skin's resistance to electricity." The trial court also found: "The basis for the polygraph examination are *recognized* physiological and psychological autonomic responses." (Our emphasis.) As to "general acceptance", the trial court's order lists federal and state agencies that utilize polygraph examinations. In addition, the trial court found: "That private industry regularly relies on the polygraph examination in the screening of prospective job applicants." None of the above findings are challenged.

At oral argument, the Assistant Attorney General stated that he could not justify items 1 and 2 of *Lucero* because neither item goes to the truth or to the reliability or validity of polygraph tests.

The trial court's findings and the concession at oral argument accord with the opinions by three judges of this Court in State v. Alderete, 86 N.M. 176, 521 P.2d 138 (Ct.App.1974). *Lucero,* however, overruled the opinions in *Alderete,* supra, to the extent they depart from the above

quotation from *Lucero*. We are bound by the *Lucero* decision. Alexander v. Delgado, 84 N.M. 717, 507 P.2d 778 (1973). Being bound by *Lucero* we may not consider the validity of the reasoning behind items 1 and 2. Accordingly, we may apply neither the trial court's findings nor the concession at oral argument, which are to the effect that no reasons exist in this case for the exclusionary rule of items 1 and 2.

Our inquiry then is whether the *Lucero* decision covers the circumstances of this case. *Lucero* neither discusses nor decides two matters raised in this case. Those matters are the effect of the New Mexico Rules of Evidence and the effect of Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

■ The New Mexico Rules of Evidence apply in this case; they did not apply in *Lucero*. Section 20–4–702, supra, states:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

On appeal, defendant asserts the test results were admissible under this rule. No such claim was raised in the trial court and will not be considered here.

The trial court found that certain tendered questions and answers (to be discussed subsequently) "are relevant to the issues raised by the charges and the defenses thereto." It also ruled that § 20–4–401, supra, did not change existing law. We agree since § 20–4–401, supra, does no more than define "relevant evidence." Section 20–4–402, supra, states:

"All relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules, or by other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible."

The trial court found that the tendered questions and answers were relevant. There is no showing, and no claim is made, that the exceptions in § 20–4–402, supra, apply.

In Chambers v. Mississippi, supra, the trial court excluded the testimony of three witnesses on the ground that their testimony was hearsay. Each of the witnesses would have testified to statements by McDonald to the effect that McDonald did the shooting with which Chambers was charged. The United States Supreme Court held that the statements were made under circumstances of considerable reliability and were critical to Chambers' defense. "In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." Why? "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." "Few rights are more fundamental than that of an accused to present witnesses in his own defense."

■ Do the two requirements of Chambers v. Mississippi, supra, exist in this case? Yes. The circumstances of considerable reliability appear in the unchallenged findings of the trial court.

In a fight between defendant and Doerr, defendant inflicted wounds with a knife. Doerr died from the wounds. The State's and defendant's version of the fight differ. The State's version is that defendant had his knife in his hand when he came around the door of his car. Defendant's version is that he did not draw the knife until Doerr wrapped his belt around his hand with the buckle dangling. There is a conflict as to whether defendant or Doerr struck the first blow. Several witnesses support the State's version. Defendant's version came into evidence through more than one witness, but these witnesses, apart from defendant, all testified as to what defendant

had stated. The defense case came down to the credibility of defendant. The Assistant District Attorney did an excellent job of attacking defendant's credibility.

The trial record demonstrates that the credibility of defendant was crucial. Tendered questions and answers from the polygraph test were to the effect that defendant did not intend to use his knife when he stopped the car, that he did not pull his knife before he got out of the car, that Doerr had his belt in his hand when defendant pulled his knife and that Doerr struck the first blow. The polygraph examiner would have testified that defendant was telling the truth when he gave the answers referred to above. This testimony was crucial because the questions and answers go both to defendant's intent and to the question of provocation, and thus, under the instructions, to whether defendant committed murder in the second degree or voluntary manslaughter.

The requirements of Chambers v. Mississippi, supra, were met.

We hold that: (1) because *Lucero* did not discuss either the effect of the New Mexico Rules of Evidence or the due process issue, *Lucero* does not govern in this case; (2) under the record in this case, the tendered evidence was admissible as relevant evidence under § 20–4–402, supra; and (3) that under the circumstances of this case, the due process requirement in Chambers v. Mississippi, supra, applies.

The trial court erred in excluding the tendered evidence. The judgment and sentence are reversed. The cause is remanded with instructions to grant defendant a new trial.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

I concur in the opinion of Chief Judge Wood.

In State v. Alderete, 86 N.M. 176, 521 P.2d 138 (Ct.App.1974), this court held that polygraph examinations were admissible in evidence because there was general scientific acceptance of such tests under the standards mentioned in the opinions.

On September 20, 1974, the Supreme Court in State v. Lucero, 86 N.M. 686, 526 P.2d 1091, 1093 (1974) ruled as follows:

> To the extent that the opinions in State v. Alderete, [supra], departed from this rule, they are hereby overruled.

*Lucero* did not determine whether the polygraph examination was now acceptable generally in the field of scientific development. Neither did it consider Rule 702 of the new Rules of Evidence. Section 20–4–702, N.M.S.A.1953 (Repl.Vol. 4, 1973 Supp.).

On October 23, 1973, prior to the decisions, supra, the trial court denied admission of the polygraph examination in the instant case because the state objected to its admission. It seems incongruous that an expert's testimony under an acceptable scientific test shall be excluded because opposing counsel object.

If the Supreme Court still believes that "the reliability of polygraph examinations is so doubtful '* * * that the procedure has not gained general acceptance in the particular field in which it belongs * * *'" (State v. Chavez, 82 N.M. 238, 239, 478 P.2d 566, 567 (Ct.App.1970), it seems incongruous that polygraph examinations should be admitted under any circumstances, for the state or for the defendant.

This theory began in New Mexico in 1961. State v. Trimble, 68 N.M. 406, 362 P.2d 788 (1961). It is closing one's eyes to scientific progress to conclude fourteen years later that the old rule as to admissibility of polygraph evidence has not changed, particularly in view of scientific acceptance of appropriately obtained polygraph evidence and its implicit recognition by the new Rules of Evidence.