573 P.2d 224
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Michael BRIONEZ, Defendant-Appellant.**

No. 3048.

Court of Appeals of New Mexico.

Oct. 25, 1977.

See also, 90 N.M. 566, 566 P.2d 115.

Anthony E. Lucero, Jr., Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Dennis P. Murphy, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

■ Defendant was convicted of criminal sexual penetration in the second degree by the use of force or coercion which results in personal injury to the victim. Section 40A–9–21(B)(2), N.M.S.A.1953 (2d Repl. Vol. 6, Supp.1975). His appeal challenges the sufficiency of the evidence as to "force or coercion" and as to "personal injury". The evidence as to these items is substantial and sufficient to sustain the conviction. The question discussed is the trial court's exclusion of testimony concerning the results of a polygraph test. This has two aspects: (1) the standard of review where the evidence is excluded; and (2) application of the standard in this case.

The indictment charged defendant with one count of kidnapping and three counts of criminal sexual penetration. The jury agreed only on the one count where he was found guilty. A mistrial was declared as to the other counts. The verdict of guilty was on a count where defendant admitted that sexual intercourse had occurred. His defense to this one count was that it was with the victim's consent.

Because defendant and the victim disagree on the consent issue, defendant contends that evidence supporting his credibility was critical to the defense. He asserts that the results of the polygraph test supports his version of the facts and the trial court's exclusion of the test results deprived him of the right to put on a defense. We agree that exclusion of the polygraph test results excluded testimony which would have favored the defense. Whether exclusion of the test results was error, however, depends on the basis for excluding this testimony.

*The Standard for Review*

■ The sequence of decisions resulting in the holding that polygraph test results may be admitted as evidence are *State v. Alderete,* 86 N.M. 176, 521 P.2d 138 (Ct.App. 1974); *State v. Lucero,* 86 N.M. 686, 526 P.2d 1091 (1974); *State v. Dorsey,* 87 N.M. 323, 532 P.2d 912 (Ct.App.1975); and *State v. Dorsey,* 88 N.M. 184, 539 P.2d 204 (1975). *State v. Bell,* 90 N.M. 134, 560 P.2d 925, 929 (1977) summarized the requirements for admissibility. "These requirements are: (1) evidence of the qualifications of the operator, (2) testimony to establish the reliability of the testing procedure, and (3) the validity of the tests made on the subject."

At an extended evidentiary hearing, defendant tendered evidence in connection with each of the above three requirements. He seems to argue that once such evidence was tendered, the trial court was required to admit the test results. *State v. Bell, supra,* shows this contention is incorrect. *Bell* states:

"It is true that the minimum standards thus set forth were satisfied by the poly-

graph test, since the State stipulated to the first two requirements and no objection was made to the third; *but this is [sic] no way makes the evidence automatically subject to admission. There is always the question of relevance.*" (Our emphasis.)

In this case, we are not concerned with relevance so much as whether the standards were in fact met. The trial court heard the tender and ruled that the standards for admission were not met, as a matter of fact. On what basis does an appellate court review the trial court's ruling?

 Generally speaking, the admission or exclusion of evidence is a matter within the discretion of the trial court. The trial court's decision will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Ramirez,* 89 N.M. 635, 556 P.2d 43 (Ct.App.1976); *State v. Marquez,* 87 N.M. 57, 529 P.2d 283 (Ct.App. 1974). An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances or the reasonable, probable and actual deductions to be drawn from the facts and circumstances. *State v. Hargrove,* 81 N.M. 145, 464 P.2d 564 (Ct.App.1970).

The same rule applies when the trial court rules on the admissibility of expert testimony. *State v. Garcia,* 76 N.M. 171, 413 P.2d 210, 214 (1966) states:

"It is the trial judge's responsibility to determine whether an offered expert is sufficiently qualified to testify in a cause, and he should exercise discretion in allowing or denying the testimony to be introduced. This discretion will be interfered with by us only when it has been abused."

See *State v. McAdams,* 83 N.M. 544, 494 P.2d 622 (Ct.App.1972). This rule is the same in civil cases. *Dahl v. Turner,* 80 N.M. 564, 458 P.2d 816, 39 A.L.R.3d 207 (Ct.App.1969).

 Judge Sutin's opinion in *State v. Alderete, supra,* states that when the requisite foundation is laid "the admission in evidence of a polygraphic test is within the discretion of the trial court." We agree.

The polygraph test result is offered by the operator on the basis of the operator's expertise. See Judge Wood's opinion in *State v. Alderete, supra.* The admission or exclusion of polygraph test results, like the admission of other expert testimony, is within the discretion of the trial court. The trial court's ruling is reviewed to determine whether there was an abuse of discretion.

*Application of the Standard*

The method of testing used was to ask defendant a "control" question and then follow the control with a "relevant" question. Defendant's responses to these questions were recorded on a chart. The operator interpreted these charted responses. The difference in the responses between the control and relevant questions was scored by the operator. The operator's opinion as to truthfulness of defendant was based on a cumulative score derived from all of the control and relevant questions asked. There is no issue as to the validity of this method of testing.

The success or failure of the test depends upon a pre-test interview. A purpose of the interview was to still any apprehension on the part of defendant and to establish a rapport between the operator and defendant. During this interview, the operator questioned defendant about matters that could interfere with the test. Also during the interview, the control and relevant questions were formulated. The exact questions were arrived at after a discussion concerning the criminal matter; in this case, the discussion included a review of the victim's and the defendant's statement. The control and relevant questions were reviewed with defendant. There is no issue as to the appropriateness of the pre-test interview or as to the appropriateness of matters covered in the interview.

In excluding the results of the test, the trial court ruled the operator was not qualified to administer the tests and that the testing procedures were not valid. In connection with these rulings, we discuss: 1. Was the operator qualified to administer the tests? 2. Was the pre-test questioning

sufficient? 3. Were the relevant questions appropriate? 4. Was the scoring system valid?

### 1. Was the operator qualified?

The operator agreed, on cross-examination, that the mental health of an examinee can affect the responses of the examinee and thus the validity of the test. He admitted that he would not test a psychotic person because such a person is unpredictable in his reactions. He admitted that he was not competent to take a psychiatric history. He disagreed with writings of an admitted expert to the effect that a neurotic person's responses were also unpredictable and asserted that he could validly test a sociopath.

The cross-examiner questioned the operator as to his knowledge of defendant's mental history, asking if the operator knew that defendant had been diagnosed as a paranoid schizophrenic, as a sociopathic personality and as having some unstated capacity for self-delusion. The operator did not know of these matters.

Defendant asserts we should not consider these matters because the prosecutor introduced no evidence as to whether they were in fact a part of defendant's mental history. The prosecutor had indicated to the trial court that such evidence could be produced and would be if the trial court allowed the polygraph test results into evidence. The trial court agreed such evidence would be admissible if the test results were admitted because such evidence would be relevant to the validity of the tests. We do not consider the schizophrenic, sociopathy or self-delusion items further because there is no evidence to support such a consideration. The operator had no knowledge concerning them; the prosecutor tendered no evidence concerning them.

■ The victim testified that prior to the alleged third act of sexual intercourse, defendant told her that he had problems with his head and was "mentally off". This testimony was before the trial court at the time of the hearing concerning admission of the polygraph test results. In light of the operator's admission that mental health can affect the responses of the person being examined, his admission that he was not qualified to take a psychiatric history, his testimony that he would not test a psychotic, but could validly test a sociopath, the trial court could conclude that the operator was not qualified to test defendant who was "mentally off", whatever that term might mean.

### 2. Was the pre-test questioning sufficient?

On cross-examination, the operator admitted that the physical health of the examinee can affect the responses given and thus the validity of the test. On direct examination, the operator testified that the pre-test interview includes a discussion of general physical health to discover matters that "could interfere" with the test.

The operator testified that he questioned defendant as to chronic illnesses, asthma, motor epilepsy, serious head injuries, ulcers and whether defendant was suffering from a cold. The operator declared that these were all that mattered. He testified that it made no difference whether defendant was suffering from hypertension at the time of the test, or had taken a depressant to the central nervous system within 48 hours of the test, or had gone to a hospital (time unspecified) with complaints of dizziness, nausea, fainting spells, cold sweats and of having been hit in the head. The operator considered it a waste of time to get into these matters because such were important only if defendant was nonreactive. According to the operator, defendant responded to the test questions.

The operator admitted to little, if any, training in anatomy and physiology. On what basis could he testify that certain physical conditions did or did not matter? Although testifying that a detailed medical history did not matter, he agreed that an admitted expert took a detailed medical history. The explanation by the operator was that so long as the examinee reacts to the questions asked on the test, a detailed medical history is superfluous to the validi-

ty of the test. This explanation was by an operator untrained in anatomy and physiology who disagrees with an admitted expert who follows a contrary practice. There was nothing indicating the operator was qualified to testify as to the necessity or lack of necessity of a detailed medical history.

■ In this situation the trial court could conclude that the operator was not qualified to testify as to physical conditions which do or do not affect the validity of the responses given by the examinee. Compare Judge Sutin's opinion in *State v. Alderete, supra.*

3. Were the relevant questions appropriate?

The operator agreed with the cross-examiner that the quality of the relevant question depends upon whether the question excludes the possibility of rationalization by the examinee. The operator explained a good relevant question as one that can be answered without "thought processes" by the examinee; one that "goes to specific facts".

The first relevant question asked was, "Did you have sex with Mary Louise three times?" Three acts of sexual intercourse are charged in the indictment. Asked why a relevant question was not asked for each of the alleged acts of sexual intercourse, the operator explained that he does not use more than three or four relevant questions, and the one relevant question asked was sufficient to cover the sex acts. This explanation might have been a sufficient explanation if the matter involved only three sexual acts; however, there were five. The victim testified to three acts of sexual intercourse and two acts of fellatio. The operator testified that he made it clear to defendant that "sex" in the relevant question covered sexual intercourse and also oral and anal sex. In asking defendant about three sex acts, the question clearly required "thought processes by defendant".

Two relevant questions used the words "did you force". Questioned concerning the use of the word "force" in a relevant question, the operator testified that one could never be sure of excluding rationalization on the part of the examinee. The operator also testified that if the examinee does not perceive the question as a threat, the reaction would be less; that the test measures the way the examinee "sees things". In asking defendant whether he used force, the question asked for defendant's view of force. Such invites rationalization.

■ The trial court ruled the relevant questions, discussed above, were invalid because of the ease with which responses could be rationalized. The trial court could properly reach this conclusion.

4. Was the scoring system valid?

The operator testified that he scored the test by the Raskin system of scoring and under that scoring, it was conclusive that defendant was telling the truth. He also testified that the score was conclusive under the Fort Gordon system of scoring. Since no explanation was given as to how the conclusive score under the Fort Gordon system was reached, we do not consider it further.

The operator testified that under the Raskin system a plus six indicates conclusively that the examinee is telling the truth, and that defendant had a score of positive eight and one-half. The operator testified that the Raskin system of scoring uses three relevant questions and three charts. The final score is an accumulation of the score for nine questions. The operator used four relevant questions and four charts. The operator said the Raskin scoring system had the same applicability to the number of questions and number of charts used in defendant's test. Why?

■ The score is an accumulation; the operator scored sixteen questions rather than the nine of the Raskin system. The more responses scored, the greater the possibility for a higher cumulative score. In this case, the cumulative score for four relevants on three charts would have been five. Absent an explanation of why the conclusion applied to a plus six score for a three-question, three-chart test also applies to a

plus six score from a four-question, four-chart test, no satisfactory explanation has been given for the conclusion reached by the operator. Without such an explanation, the operator's conclusion was not competent evidence. *Galvan v. City of Albuquerque,* 85 N.M. 42, 508 P.2d 1339 (Ct.App.1973). Evidence Rule 705 is not to the contrary because it requires the expert to "give his reasons therefor". The operator did not give reasons.

The ruling excluding the polygraph test results was not against the logic and effect of the facts and circumstances developed in the tendered evidence. The trial court did not abuse its discretion in excluding the polygraph test results.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HENDLEY and SUTIN, JJ., concur.