702 P.2d 1001

**Robert James TAFOYA, Petitioner,**

v.

**Honorable Joseph BACA, Respondent.**

**No. 15837.**

Supreme Court of New Mexico.

July 18, 1985.

Koch & Jones, Ron Koch, Albuquerque, for petitioner.

Stephen Slusher, Deputy Dist. Atty., Albuquerque, for respondent and real party in interest.

## OPINION

RIORDAN, Justice.

The petitioner, Robert James Tafoya (Tafoya) has been charged with numerous crimes and remains in custody, awaiting trial in the second judicial district. This action arose when Tafoya's attorney obtained an ex-parte order allowing Tafoya to be transported for the purpose of taking a polygraph test. The order contained provisions directing the clerk to seal it and further directing the transporting officer (who was specifically named in the order) not to disclose its contents or existence. How-

ever, the transporting officer disclosed its existence to a member of the district attorney's staff. Whether the disclosure was intentional or inadvertent has not yet been determined by the district court, but it does not effect our analysis of the legal question before us.

After learning of the existence of the order, the assistant district attorney sought discovery of the results of the polygraph test. Tafoya's attorney refused to disclose whether the examination had taken place, but based on the available evidence, the district court found that a polygraph test had occurred. Relying on *State v. Harrison*, 90 N.M. 439, 564 P.2d 1321 (1977), the district court held that the State was entitled to discover the existence and results of the polygraph test, if the defendant testified and if the court conducted in camera review to determine relevance.

Tafoya petitioned this Court for a writ of prohibition to prohibit the district court from requiring disclosure of whether a polygraph test was taken, and, if taken, from requiring production of the polygraph test results. We granted the alternative writ which we now make permanent.

The issue before this Court is whether such polygraph test results are discoverable by the State absent notice by defendant of an intent to use such evidence at trial.

Prior to adoption of NMSA 1978, Evid. Rule 707 (Repl.Pamp.1983)[1], neither this Court nor the Court of Appeals ever determined that an expert opinion based upon polygraph test results was a scientifically reliable measure of truthfulness or deception. Indeed, there continues to be a great deal of debate in the scientific community as to its validity.

Expert opinions based upon polygraph test results were first discussed by this Court in *State v. Trimble*, 68 N.M. 406, 362 P.2d 788 (1961). In *Trimble*, the defendant voluntarily signed a statement agreeing to take a polygraph test and agreeing that the results could be used against him. None-

---

1. Rule 707 was adopted effective June 1, 1983.

theless, Chief Justice Compton, writing for this Court, reversed the conviction. This Court adopted the standard which was enumerated in *Frye v. U.S.*, 293 Fed. 1013 (D.C.Cir.1923), and is used by most courts in determining whether "scientific" evidence can be admitted. While not reviewing or discussing whether the polygraph test was scientifically reliable, this Court reversed the defendant's conviction and held that admission of the polygraph test evidence *over objection* was error, regardless of the signed statement. The reliability of the polygraph test was not discussed, perhaps because the evidence was introduced by way of signed stipulation rather than by the trial court after a foundation was presented. This Court, in denying its use in New Mexico courts, apparently was satisfied with the fact that no state admitted polygraph test evidence at that time.

The next New Mexico case to discuss polygraph test results was *State v. Chavez*, 80 N.M. 786, 461 P.2d 919 (Ct.App.1969). The Court of Appeals was faced with an appeal in which the defendant not only stipulated the test results into evidence but also did not object to their admission at trial. The Court held that failure to object to inadmissible evidence prevents reversal of that point on appeal. The Court of Appeals did state, however:

> The rule in New Mexico is that regardless of whether there is a stipulation, or regardless of the contents of the stipulation, evidence as to polygraph examinations and results is not admissible *over objection.*

*Id.* at 787, 461 P.2d at 920 (emphasis added).

In 1974, the Court of Appeals (with two judges who were not on the bench when the *Chavez* case was decided) again addressed the admission of polygraph test results in *State v. Alderete*, 86 N.M. 176, 521 P.2d 138 (Ct.App.1974). While it affirmed the conviction over the defendant's contention that an excluded polygraph test was admissible, the Court stated that under certain circumstances the results of a polygraph test would be allowed. Judge Sutin

stated, without revealing the basis of his opinion, that "[s]cientific recognition of polygraphic tests has now arrived." *Id.* at 178, 521 P.2d at 140. Judge Wood, specially concurring, with Judge Lopez concurring, avoided recognizing " 'general scientific acceptance' " as the basis for admission but rather stated that in order for the results to be admissible, there needs to be "evidence that the tests are reasonably reliable, reasonably precise and evidence that the tests are substantially accepted by experts whose competence includes the subject matter of the tests." *Id.* at 179, 521 P.2d at 141.

In *State v. Lucero*, 86 N.M. 686, 688, 526 P.2d 1091, 1093 (1974), this Court overruled *Alderete* and stated:

> This court has held to the rule which admits polygraph test results when each of these requirements are met: 1. The tests were stipulated to by both parties to the case; 2. When no objection is offered at trial; 3. When the court has evidence of the qualifications of the polygraph operator to establish his expertise; 4. Testimony to establish the reliability of the testing procedure employed as approved by the authorities in the field; and 5. The validity of the tests made on the subject.

This Court did not address the question of whether polygraph test evidence had reached the level of scientific reliability, and the opinion caused a conflict in the then existing law. *Chavez* held that if requirements 1 and 2 restated in *Lucero* were met, admission of polygraph test results was not reversible error and could not be raised for the first time on appeal.

The next year, the Court of Appeals reversed the conviction of the defendant in *State v. Dorsey*, 87 N.M. 323, 532 P.2d 912 (Ct.App.), *cert. granted*, 88 N.M. 184, 539 P.2d 204 (1975) (*Dorsey* I and II). Judge Wood, writing for the Court of Appeals, held that the trial court erred in not allowing the defendant's polygraph test results in evidence. Rather than challenge *Lucero*, which was a Supreme Court case (but authored by a district judge and concurred

in by two justices), he purported to distinguish it. Judge Wood pointed out that the New Mexico Rules of Evidence had been adopted but did not apply to *Lucero*. He held that under the doctrine announced by the United States Supreme Court in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the defendant's constitutional rights were violated by excluding the results of the polygraph test since the requirements of *Chambers* had been met. The two *Chambers* requirements were: 1. that the evidence was reliable, and 2. that it was critical to the defense. The Court of Appeals reasoned that since there was no challenge to requirements 3, 4 and 5 announced in *Lucero*, that requirements 1 and 2 could not be applied to exclude the evidence considering the Rules of Evidence and *Chambers*. This Court granted certiorari and affirmed the Court of Appeals, but upon slightly different grounds (*Dorsey* II). We pointed out that only requirements 1 and 2 announced in *Lucero* were being addressed. This Court held that the requirements announced a year earlier were: "(1) [m]echanistic in nature; [and] (2) [i]nconsistent with the concept of due process." *Id.* 88 N.M. at 185, 539 P.2d at 205. Relying on the "announced purpose and construction of the New Mexico Rules of Evidence," this Court overruled *Lucero* and threw out requirements 1 and 2. *Id.* This Court was apparently satisfied to let the trial courts admit polygraph test evidence if requirements 3, 4, and 5 under *Lucero* could be met.

In *State v. Harrison* (the case on which the district court relied in the instant case), this Court held that the results of a polygraph test requested by an indigent defendant and administered at public expense could be used to impeach the defendant when he took the stand on his own behalf.

The next few cases involving polygraph tests all dealt with the question of the qualifications of the operator and the validity of the test under requirements 3, 4 and 5 from *Lucero* that were still in effect. *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977), upheld the exclusion of the results

of an "inconclusive" test on the ground that it would not be relevant and restated the three requirements for admission still in effect under *Lucero*. *State v. Brionez*, 91 N.M. 290, 573 P.2d 224 (Ct.App.), *cert. denied*, 91 N.M. 249, 572 P.2d 1257 (1977), and *State v. Fuentes*, 91 N.M. 554, 577 P.2d 452 (Ct.App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978), both upheld the exclusion of test results because the operator was not qualified or the results not valid. *State v. Gallegos*, 92 N.M. 370, 588 P.2d 1045 (Ct.App.), *cert. denied*, 92 N.M. 353, 588 P.2d 554 (1978), was a case involving a polygraph examination of the *victim* admitted over defendant's objection. Judge Wood, again writing for the Court of Appeals, stated that on review, the Court would not reverse admission or exclusion of polygraph tests, except for abuse of discretion, and that a polygraph test is really the opinion of a witness (the operator) that was admissible in that case under NMSA 1978, Evid. Rule 608(a), apparently because the victim's credibility was attacked on cross-examination.

A second issue discussed in *Gallegos* concerning polygraph tests was whether the trial court erred in requiring the defense to disclose the report of a polygraph examiner furnished to the defense to aid in cross-examination of the State's witness. The Court held that the trial court's error in ordering disclosure was harmless.

The final case in this twisted history was *State v. Anthony*, 100 N.M. 735, 676 P.2d 262 (Ct.App.1983). The Court of Appeals reversed the defendant's conviction for failure of the trial court to follow the requirements of Rule 707.

That brings us to the current status of the admission of polygraph test results under New Mexico law. This Court adopted Rule 707 in an attempt to standardize the admission of such test results and to *supercede* the various requirements and holdings of prior cases that were inconsistent with the rule. We also announced to the district judges our frustration in dealing with polygraph test evidence and

our reservations as to its continued use.[2] Our aim was that by the application of Rule 707 and NMSA 1978, Crim.P. Rule 28 (Cum.Supp.1984)[3], we could lay some of these issues to rest and assure the reliability of polygraph test evidence that was to be admitted.

▇▇▇ Under Rule 707(d), any party intending to use polygraph test evidence at trial must give written notice to the opposing party of his intention. Under Rule 707(g), once such notice has been given, the court may compel, for good cause shown, a witness who has previously voluntarily taken a polygraph test to submit to another polygraph test by an examiner of the other party's choice. If such witness refuses to submit, no polygraph test evidence is admissible at trial. Under Rule 28(a)(2), a defendant must disclose only those results of a polygraph test which the defendant intends to use at trial. Thus, under each of these rules, polygraph test results are *only* discoverable by the State after the defendant has given notice of defendant's intent to introduce such results into evidence at trial. Since these rules were promulgated by this Court *after* our opinion in *Harrison*, they supercede that opinion and are controlling in this case. Therefore, the alternative writ of prohibition is now made permanent, and the district court is prohibited from requiring disclosure of the existence of or results of any polygraph test that might have occurred absent notice being given by the defendant of his intent to use such polygraph test evidence.[4]

IT IS SO ORDERED.

FEDERICI, C.J., and SOSA and WALTERS, JJ., concur.

STOWERS, J., specially concurs.

STOWERS, Justice, specially concurring.

I concur with the result reached by the majority in this case.

In doing so, however, I question the validity of polygraph tests and their legitimate place in the trial of a lawsuit.

As noted by the majority opinion, neither this Court or the Court of Appeals has ever determined the validity of these tests, and acknowledges that a great deal of debate continues regarding this issue.

Without going into detail, it is apparent that the number of mechanical, mental, physical, and emotional variables, to say nothing of the involvement of the operator and his expertise creates situations fraught with uncertainty and inaccuracy.

When we keep in mind that a trial is a search for the truth, I question whether the use of polygraph evidence has a valid place in furthering this process.

As a result of this rule, this case also demonstrates that ex-parte considerations, which are not favored under the law, put the trial court in the precarious position of attempting to withhold information from a party in an attempt to create a confidential situation, which rarely succeeds, thus leading to this litigation, all the result of a rule that is questionable at best.

In addition to the above and also of concern, there appears to be a potential conflict between NMSA 1978, Crim.P. Rule 28(a) (Cum.Supp.1984) which provides that polygraph examinations shall be disclosed

---

**2.** Supreme Court memorandum to the Court of Appeals judges, district court judges, district attorneys and chief public defender dated April 21, 1983, which states:

Attached is Rule 707 that has been adopted by the Supreme Court for cases filed on or after June 1, 1983.

The Court's adoption of this rule is in response to complaints and serious problems that we presently have in relation to polygraph testimony in New Mexico. We have adopted this rule on an interim basis in the hope that it solves the problems.

If not, we will consider amending Rule 707 in the future to specifically eliminate polygraph testimony in New Mexico.

**3.** Rule 28 was amended to include polygraph tests effective October 1, 1983.

**4.** At the time we granted the alternative writ, we directed the parties to brief the issue of whether Rule 707 should be amended to preclude use of polygraph test evidence in New Mexico courts. We also allowed various amicus briefs on the subject. This question remains under study by this Court.

"within 30 days after the date of arraignment or filing of a waiver of arraignment or not less than ten days before trial, *whichever date occurs earlier * * *,*" (emphasis added), and NMSA 1978, Evid. Rule 707(d) (Repl.Pamp.1983), which provides that "not less than ten days before trial or such other time as the court may direct * * *."

A further conflict exists in that Rule 28(a) requires a party to disclose only those polygraph test results which he intends to introduce in evidence; whereas Rule 707(d)(4) requires "a list of any prior polygraph examinations taken by the examinee in the matter under question * * *."

The majority has so aptly labeled the story of the polygraph in New Mexico "a twisted history." I think it is time to reexamine the whole polygraph concept with a view to determining whether it is germane to the judicial process.